**AKERMAN LLP**
M. Darren Traub (NYSB No. 4210035)
Rosanna Vargas (NYSB No. 5175534)
666 Fifth Avenue, 20th Floor
New York, NY 10103
(212) 880-3800
darren.traub@akerman.com
rosanna.vargas@akerman.com

**AKERMAN LLP**
Christopher G. Oprison* (DC Bar No. 489087)
Ildefonso Mas (NYSB No. 5202221)
750 9th Street NW, Suite 750
Washington, DC 20001
(202) 824-1703
christopher.oprison@akerman.com
ildefonso.mas@akerman.com
*pro hac vice application pending

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JESSICA BURCIAGA, ALANA CAMPOS, PAOLA CANAS, JAIME EDMONDSON, BRENDA LYNN GEIGER, CIELO JEAN (CJ) GIBSON, VIDA GUERRA, JESSICA HINTON, ROSIE OLIVIA JONES, JESSICA (CHARM) KILLINGS, JOANNA KRUPA, DESSIE MITCHESON, CARISSA ROSARIO, GABBY JEAN SAUCEDO, TIFFANY TOTH, SARA UNDERWOOD, SANDRA VALENCIA, IRINA VORONINA, and HEATHER RAE YOUNG, <br><br> Plaintiffs, <br><br> - against - <br><br> C.J. NYC INC. d/b/a NYC GENTLEMEN'S CLUB and LISA ANN PIAZZA, CHIEF EXECUTIVE OFFICER OF C.J. NYC INC. <br><br> Defendants. | The Honorable _____ <br><br> Civil Action No. 15-_____ <br><br> **COMPLAINT** <br><br> (Jury Trial Demanded) |

## COMPLAINT

COME NOW Plaintiffs JESSICA BURCIAGA, ALANA CAMPOS, PAOLA CANAS, JAIME EDMONDSON, BRENDA GEIGER, CIELO JEAN (CJ) GIBSON, VIDA GUERRA, JESSICA HINTON, ROSIE OLIVIA JONES, JESSICA "CHARM" KILLINGS, JOANNA KRUPA, DESSIE MITCHESON, CARISSA ROSARIO, GABBY JEANNE SAUCEDO, TIFFANY TOTH, SARA UNDERWOOD, SANDRA VALENCIA, IRINA VORONINA, and HEATHER RAE YOUNG (collectively, "Plaintiffs"), by and through undersigned counsel, as and for their Complaint against Defendants C.J. NYC Inc., d/b/a NYC Gentlemen's Club, and Lisa Ann Piazza, Chief Executive Officer, (collectively, "Defendants") allege as follows:

## INTRODUCTION

1.      Upon information and belief, Defendants have pirated and altered the images, likeness and identity of each Plaintiff Model for purely self-serving commercial purposes.  As the allegations in the Complaint detail, Defendants are chronic and habitual infringers.

2.      Advertisements containing the unauthorized images identified in this Complaint were never negotiated or purchased by Defendants and have been posted by Defendants for the purpose of advertising, promoting and marketing Defendants' business interests.

3.      Defendants did not seek consent to use any image identified herein.  Had each Plaintiff been afforded the opportunity to consider whether to consent and release rights as to the use or alteration of any image, each Plaintiff would have promptly declined.

4.      Defendants' actions are misleading and injurious to each Plaintiff by falsely and fraudulently representing that each model depicted is somehow affiliated with Defendants, has contracted to perform at and participate in events at the NYC Gentlemen's Club and/or has been

hired to promote, advertise, market or endorse its live nude events and other activities offered in the private setting of the Club.  They also create the false and fraudulent representation that each Plaintiff Model depicted in the advertisements will attend each event and participate in the activities advertised

5.    By using the images, likeness and identity without authority or consent, Defendants have jeopardized each Plaintiff's image, brand and marketability.

6.    Defendants' conduct has deprived each Plaintiff the opportunity to engage in arms-length negotiations regarding the terms and conditions of use of their images, including the term of any release, remuneration per image or use, or the ability to decline the business opportunity entirely.

7.    Having operated a business in the live adult entertainment industry, Defendants are well aware of the standard negotiation process over terms of use, conditions of release, licensing issues, and other contractual incidences related to use and exploitation of images for Defendants' commercial benefit.

8.    Despite being well aware of an obligation to do so, Defendants never negotiated for or purchased any image of any Plaintiff.  On the contrary, Defendants circumvented the typical arms-length negotiation process entirely and pirated the images.  In doing so, Defendants deprived each Plaintiff of her right to say "no," to protect her image, brand and reputation, and gained a windfall by using and altering for Defendants' own commercial purposes the images of professional and successful models without having to compensate the models a single penny for such usage.

9.      Each Plaintiff seeks, among other relief, an Order immediately and permanently enjoining Defendants' illegal activities, and compelling Defendants to appropriately compensate each Plaintiff for the theft and piracy of her image.

## PARTIES

### A. Plaintiffs

10.      Given the multitude of violations across numerous models, and the similarity of misconduct from Defendants across all models, in the interest of judicial economy, Plaintiffs, through counsel respectfully consolidate all actionable violations *presently known* into this single collective action.

11.      Plaintiff Jessica Burciaga ("Burciaga") is, and at all times relevant to this action was, a professional model and a resident of Whittier, California.

12.      Plaintiff Alana Campos ("Campos") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles, California.

13.      Plaintiff Paola Canas ("Canas") is, and at all times relevant to this action was, a professional model and a resident of San Gabriel, California.

14.      Plaintiff Jaime Edmondson ("Edmondson") is, and at all times relevant to this action was, a professional model and a resident of Saint Petersburg, Florida.

15.      Plaintiff Brenda Lynn Geiger ("Geiger") is, and at all times relevant to this action was, a professional model and a resident of Brewerton, New York.

16.      Plaintiff Cielo Jean (CJ) Gibson ("Gibson") is, and at all times relevant to this action was, a professional model and a resident of Santa Monica, California.

17.      Plaintiff Vida Guerra ("Guerra") is, and at all times relevant to this action was, a professional model and a resident of Beverly Hills, California.

18.     Plaintiff Jessica (Jessa) Hinton ('Hinton") is, and at all times relevant to this action was, a professional model and a resident of Sherman Oaks, California.

19.     Plaintiff Rosie Olivia Jones ("Jones") is, and at all times relevant to this action was, a professional model and a resident of Ashford, Middlesex, the United Kingdom.

20.     Plaintiff Jessica (Charm) Killings ("Killings") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles, California.

21.     Plaintiff Joanna Krupa ("Krupa) is, and at all times relevant to this action was, a professional model and a resident of Studio City, California.

22.     Plaintiff Dessie Mitcheson ("Mitcheson") is, and at all times relevant to this action was, a professional model and a resident of Costa Mesa, California.

23.     Plaintiff Carissa Rosario ("Rosario") is, and at all times relevant to this action was, a professional model and a resident of West Hollywood, California.

24.     Plaintiff Gabby Jeanne Saucedo ("Saucedo") is, and at all times relevant to this action was, a professional model and a resident of Moreno Valley, California.

25.     Plaintiff Tiffany Toth ("Toth") is, and at all times relevant to this action was, a professional model and a resident of Orange, California.

26.     Plaintiff Sara Underwood ("Underwood") is, and at all times relevant to this action was, a professional model and a resident of Scappoose, Oregon.

27.     Plaintiff Sandra Valencia ("Valencia") is, and at all times relevant to this action was, a professional model and a resident of San Gabriel, California.

28.     Plaintiff Irina Voronina ("Voronina") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles, California.

29.     Plaintiff Heather Rae Young ("Young") is, and at all times relevant to this action was, a professional model and a resident of Beverly Hills, California.

**B. Defendants**

30.     Based upon publicly available records, and further upon information and belief, Defendant C.J. NYC Inc. ("CJNYC") is a corporation organized and existing under the laws of the State of New York with a principal place of business at 26-50 Brooklyn Queens Expressway (BQE) West, Woodside, New York 11377.  Upon information and belief, CJNYC operates and does business as "NYC Gentlemen's Club" ("the Club") located at 26-50 Brooklyn Queens Expressway (BQE) West, Woodside, New York 11377.  The Club is a private, gentlemen's Club engaging in the business of and hosting adult entertainment involving live nude women dancers.  Upon information and belief, CJNYC coordinates its advertising, marketing and promotional activities for the Club in interstate commerce through, among other things, active and dynamic use     of     such     websites     as     www.NYCGENTLEMENCLUB.com, www.HOTTESTNEWYORKSTRIPPERS.com,   and   www.NYCGENTLEMENSCLUB.com, and various social media outlets such as Facebook, Twitter, Instagram, and Tumblr, among others.   Upon information and belief, Defendant CJNYC's business, services, events and attractions are conducted in interstate commerce.

31.     Upon information and belief, Defendant Lisa Ann Piazza ("Piazza"), is an individual who works and/or resides in Woodside, New York.  Upon information and belief, Piazza presently serves, and during all times relevant to the allegations raised herein, served as the Chief Executive Officer ("CEO") of CJNYC.  As CEO, Piazza had operational and managerial control over the business operations of CJNYC and decision-making authority for

CJNYC, including decisions relating to CJNYC's promotional, advertising, marketing and endorsement activities such as those detailed in this Complaint.

## JURISDICTION AND VENUE

32.    This Court has original federal question jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 as Plaintiffs have each individually stated claims under the Lanham Act, 28 U.S.C. § 1125(a)(1).  This Court has supplemental jurisdiction over the New York state law claims alleged herein pursuant to 28 U.S.C. § 1367.

33.    The Court has personal jurisdiction over Defendant CJNYC based on its contacts with the State of New York and City of New York, County of Queens, including but not limited to CJNYC being registered in New York to do business, having its physical location and principal place of business in New York, and committing the actions giving rise to the harm and damages alleged herein in the State of New York, City of New York, County of Queens.

34.    The Court has personal jurisdiction over Defendant Piazza.  Piazza lives and works in the State of New York, operates CJNYC as the CEO in the City of New York, County of Queens, and, upon information and belief, is ultimately responsible for the decisions and business choices for CJNYC that give rise to the allegations in this Complaint.

35.    Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. §§ 1391(a) and (b) because Defendant CJNYC has its principal place of business in Woodside, New York, located in the City of New York, County of Queens and all acts giving rise to the claims set forth herein occurred or originated in Queens County, New York.  Upon information and belief, Defendant Piazza works and resides in Woodside, New York.

## FACTUAL BACKGROUND

A. **Standard and Customary Business Practices in the Modeling Industry Require Arms-Length Negotiations over the Terms and Conditions of Usage and Remuneration for any Modeling Images**

36.    Each Plaintiff is a professional model who earns a living by promoting her image and likeness to selected clients, commercial brands, media and entertainment outlets, as well as relying on her reputation and own brand for modeling, acting, hosting, and other opportunities.

37.    Each Plaintiff's career in modeling, acting, and private enterprise has value stemming from the goodwill and reputation each has built, all of which is critical to establishing a brand, being selected for jobs and maximizing earnings.

38.    In the modeling industry, individuals such as Plaintiffs typically do not have a single employer.  Instead, models such as Plaintiffs work on an independent contractor basis for different agents or entities.

39.    Each Plaintiff is a responsible professional in the ordinary course.  Each Plaintiff seeks to control the use and dissemination of her image and, thus, actively participates in vetting and selecting modeling, acting, brand spokesperson, or hosting engagements.

40.    A model's vetting and selection of a professional engagement involves a multi-dimensional assessment, to wit:

   a.   determine whether the individual or entity seeking a license and release of a model's image, likeness or identity is reputable, has reputable products or services, and, through affiliation therewith, would enhance or harm a model's stature or reputation;

    b.  this reputational information is used in negotiating compensation.  The negotiated compensation typically depends on the work a model is hired to do, the time involved, travel and how her image is going to be used (among other variables);

    c.  to protect her reputation and livelihood, a model or her agent carefully and expressly defines the terms and conditions of use;

    d.  the entire negotiated deal is reduced to and memorialized in an integrated, written agreement which defines the parties' relationship.  The terms and conditions of the Agreement typically, unless otherwise expressly delineated, bind and are applicable to only the parties to that Agreement.

41.    In the modeling industry, reputation is critical.  Endorsing, promoting, advertising or marketing the "wrong" product, or working in a disreputable industry can severely impact a model's career by limiting or foreclosing future modeling or brand endorsement opportunities. Conversely, association with high-end companies, products, or magazines can enhance a model's earning potential and career opportunities by making a model more sought after and desirable.

42.    For these reasons, *if* a model chose to jeopardize her career for a compromising engagement (such as appearing in an advertisement for a live nude strip club), the fee she would charge would necessarily exceed the fee she would charge for more mainstream and reputable work.

**B.**  **Defendants Have Used and Altered Each Plaintiff's Image, Likeness and Identity Without Authority, for Self-Serving Commercial Gain and Without Offering or Paying Compensation to Any Plaintiff**

43.    Plaintiffs are all models who have built a livelihood promoting their images and likenesses to selected clients and relying on their reputations and own brands for modeling, acting, hosting, and other opportunities.

44.    Each Plaintiff's career in modeling, acting, and private enterprise has value stemming from the goodwill and reputation each has built, all of which is critical to establishing a brand, being selected for jobs and maximizing earnings.

45.    Each Plaintiff has worked to establish herself as reliable, reputable and professional.  Each Plaintiff must necessarily be vigilant in protecting her "brand" from harm, taint, or other diminution.  Any improper or unauthorized use of an image, likeness or identity could substantially injure the career and career opportunities of each Plaintiff.

46.    As set forth below, each Plaintiff's image, likeness and/or identity has been misappropriated and intentionally altered by or at the direction of Defendants CJNYC and Piazza.  Defendants' conduct creates the false and misleading appearance and impression that each Plaintiff either works for Defendants, has appeared or will appear in live nude dancing at the Club, and/or has agreed and consented to advertise, promote, market or endorse Defendants' business, the Club or one or more Club events or activities.

### Plaintiff Jessica Burciaga

47.    Burciaga is, and at all times relevant to this action was, a successful businesswoman, professional model and actress with numerous accomplishments.  Burciaga's business ventures include a women's online clothing boutique, www.SailorandSaint.com.  As a model, Burciaga won *Stuff* Magazine's "Neighborhood Knockout" contest, appeared as a ring girl in EA Sports Fight Night Round 3 video game, was a *Playboy* Playmate, and was featured in *Maxim*, *Import Tuner*, *Modified* Magazine, *Performance Auto & Sound*, *Show Latina*, and *Lowrider* Magazine, among others.  As an actress, Burciaga has appeared as herself in several episodes of "The Girls Next Door" reality TV series.

48.     Burciaga has over 1.2 million Instagram followers and 200,000 Twitter subscribers.

49.     In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Burciaga negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

50.     Burciaga's image, likeness and identity are depicted in at least one photo, enclosed as **Exhibit A** to the Complaint, which has been used and altered to create the false perception that Burciaga has consented or agreed to promote, advertise, market and/or endorse the Club's "Amateur Stripper Contest," all to benefit Defendants' commercial interests.

51.     Burciaga's image, likeness and identity in Exhibit A are being used as advertising.

52.     Burciaga's image, likeness and identity in Exhibit A are being used on social media.

53.     Burciaga's image, likeness and identity in Exhibit A are tagged with "AMATEUR STRIPPER CONTEST" and www.nycgentlemensClub.com and being used for branding purposes.

54.     Burciaga's image, likeness and identity in Exhibit A are being used as a "coupon" to promote the Club's "$50 Entry Fee for Contestants."

55.     Burciaga has never been employed by Defendants nor contracted with Defendants to be a dancer at the Club.

56.     Burciaga has never been hired by Defendants nor contracted with Defendants to advertise, promote, market or endorse Defendants business, the Club or any Club event.

57.    Defendants never sought permission nor authority to use or alter Burciaga's image, likeness or identity to advertise, promote, market or endorse Defendants, the Club, or any Club event.

58.    Burciaga never gave permission, assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants business, the Club, or any Club event.

59.    Defendants neither offered nor paid any remuneration to Burciaga for the unauthorized use or self-serving alteration of her image, likeness or identity.

60.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Burciaga's images in their market activities and business.  In doing so, Defendants have further damaged Burciaga.

### Plaintiff Alana Campos

61.    Campos is, and at all times relevant to this action was, a successful professional model and actress with numerous accomplishments.  As a model, Campos was a *Playboy* Playmate, and has appeared in *Astonish* Magazine, *Viva Glam* Magazine, *Bliss* Magazine, was the Cover girl of *AZ Foothills*, and has been featured in advertising campaigns of Arden B, Target, Chynna Dolls, Frederick's of Hollywood, ICollection, Elegant Moments, Drift Eyewear, Sexy Dresses, Sachika, Marisa Kenson, and Sports Calendar.  Campos is a spokes model for My Body Journey.  As an actress, Ms. Campos starred in the movie "Last Vegas" with Robert DeNiro, Morgan Freeman and Michael Douglas.  Campos was also a featured Tecate Beer ring girl at the *Mayweather v Pacquiao* pay per view fight in April 2015.

62.    Campos has over 520,000 Instagram followers.

63.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Campos negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

64.    Campos' image, likeness and identity are depicted in at least two photos, enclosed as **Exhibit B** to the Complaint, one of which has been used and altered to create the false perception that Campos has consented or agreed to promote, advertise, market and/or endorse the Club's "Halloween Hottest Costume Party in New York City" and the other of which has been used and similarly altered to promote, advertise, market and/or endorse the Club's "St. Patrick's Day Happy Go Lucky" party, all to benefit Defendants' commercial interests.

65.    Campos' image, likeness and identity in Exhibit B are being used as advertising.

66.    Campos' image, likeness and identity in Exhibit B are being used on social media.

67.    Campos' image, likeness and identity in Exhibit B are tagged with "#bigtitties," #exoticdancer," and "#stripClubs" and www.nycgentlemenClub.com and being used for branding purposes.

68.    Campos' image, likeness and identity in Exhibit B are being used as a "coupon" to promote the Club's "Free Admission before 8pm."

69.    Campos' image, likeness and identity in Exhibit B are being used for an additional, foreseeable use by Xtreme Magazine.

70.    Campos has never been employed by Defendants nor contracted with Defendants to be a dancer at the Club.

71.    Campos has never been hired by Defendants nor contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

72.     Defendants never sought permission nor authority to use or alter Campos' image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

73.     Campos never gave permission, assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants business, the Club or any Club event.

74.     Defendants neither offered nor paid any remuneration to Campos for the unauthorized use or self-serving alteration of her image, likeness or identity.

75.     Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Campos' images in their market activities and business.  In doing so, Defendants have further damaged Campos.

### *Plaintiff Paola Canas*

76.     Canas is, and at all times relevant to this action was, a successful professional model, host, and actress.  As a model, Canas has worked runway shows in her native Colombia, Mexico, the United States, Ecuador and Paris, France.  Canas contracted as a model for *Curve* and their worldwide lingerie line and features in *Curve's* international ad campaign.  In Dubai, Canas was selected as the face of the Masters Golf tournament.  Canas' image was used in Orlando, Florida for the "International Surf and Sport Expo."  Canas has worked for international brands and labels such as Soho, Kiss Underwear, Salon International, Zona Rosa and Esteban Escobar.  As a host and actress, Canas has appeared on FOX Sports, Telemundo and TV Azteca among others.

77.     In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Canas negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

78.     Canas' image, likeness and identity are depicted in at least one photo, enclosed as **Exhibit C** to the Complaint, which has been used and altered to create the false perception that Canas has consented or agreed to promote, advertise, market and/or endorse the Club's "WILD WEDNESDAYS NYC'S Rooftop BBQ," all to benefit Defendants' commercial interests.

79.     Canas' image, likeness and identity in Exhibit C are being used as advertising.

80.     Canas ' image, likeness and identity in Exhibit C are being used on social media.

81.     Canas' image, likeness and identity in Exhibit C are tagged with www.nycgentlemenClub.com and www.hottestNewYorkStrippers.com and being used for branding purposes.

82.     Canas ' image, likeness and identity in Exhibit C are being used as a "coupon" to promote the Club's "Customer Appreciation – Free BBQ."

83.     Canas has never been employed by Defendants nor contracted with Defendants to be a dancer at the Club.

84.     Canas has never been hired by Defendants nor contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

85.     Defendants never sought permission nor authority to use or alter Canas' image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

86.    Canas never gave permission, assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

87.    Defendants neither offered nor paid any remuneration to Canas for the unauthorized use or self-serving alteration of her image, likeness or identity.

88.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Canas' images in their market activities and business.  In doing so, Defendants have further damaged Canas.

### Plaintiff Jaime Faith Edmondson

89.    Edmondson is, and at all times relevant to this action was, a successful professional model, host and actress with numerous accomplishments.  After graduating from Florida Atlantic University with a degree in Criminal Justice in 2002, Edmondson worked as a police officer in Boca Raton, Florida for two years.  She then become a cheerleader for the Miami Dolphins.  Edmondson, along with a fellow Miami Dolphins cheerleader, participated in "The Amazing Race 14" reality TV series.  As a model, Edmondson was a *Playboy* Playmate. She is also a sports blogger for *Playboy* online and co-host of Sirius Fantasy Sports Radio. Edmondson appeared on "The Bunny House" documentary, and in the Trace Adkins video for "This Aint No Love Song," among others.

90.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Edmondson negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

91.    Edmondson's image, likeness and identity are depicted in at least two photos, enclosed as **Exhibit D** to the Complaint, one of which has been used and altered to create the false perception that Edmondson has consented or agreed to promote, advertise, market and/or endorse the Club's "XXX Football Season" events, and the other of which includes two separate Edmondson images used and similarly altered to promote, advertise, market and/or endorse the Club's "Strip Sunday Brunch," all to benefit Defendants' commercial interests.

92.    Edmondson's image, likeness and identity in Exhibit D are being used as advertising.

93.    Edmondson's image, likeness and identity in Exhibit D are being used on social media.

94.    Edmondson's image, likeness and identity in Exhibit D are tagged with "#STRIPSUNDAY"    AND    "LIVE    GIRLS,"    www.NYCGENTLEMENCLUB.com, www.HOTTESTNEWYORKSTRIPPERS.com,    and    www.NYCGENTLEMENSCLUB.com and being used for branding purposes.

95.    Edmondson's image, likeness and identity in Exhibit D are being used as a "coupon" to promote the Club's "$6 Mimosa" and "Everyone $10."

96.    Edmondson has never been employed by Defendants nor contracted with Defendants to be a dancer at the Club.

97.    Edmondson has never been hired by Defendants nor contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

98.    Defendants never sought permission nor authority to use or alter Edmondson's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

99.     Edmondson never gave permission, assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

100.    Defendants neither offered nor paid any remuneration to Edmondson for the unauthorized use or self-serving alteration of her image, likeness or identity.

101.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Edmondson's images in their market activities and business. In doing so, Defendants have further damaged Edmondson.

### *Plaintiff Brenda Geiger*

102.    Geiger is, and at all times relevant to this action was, a successful professional model, television personality, and actress with numerous accomplishments.  As a model, Geiger has been featured in numerous magazines such as *Show, Maxim, Glamour,* and *Raw,* as well as product and brand campaigns such as Primitive Clothing.  Geiger has also appeared on the Howard Stern Show in a "Miss HTV" contest and in music videos including Keri Hilton's video "Ms. Officer."

103.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Geiger negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

104.    Geiger's image, likeness and identity are depicted in at least two photos, enclosed as **Exhibit E** to the Complaint, one of which has been used and altered to create the false perception that Geiger has consented or agreed to promote, advertise, market and/or endorse the Club's "MEMORIAL DAY WEEKEND: *Grand Opening"* and the other of which has been used

and similarly altered to promote the Club's "Cinco De Mayo" Event, all to benefit Defendants' commercial interests.

105. Geiger's image, likeness and identity in Exhibit E are being used as advertising.

106. Geiger's image, likeness and identity in Exhibit E are being used on social media.

107. Geiger's image, likeness and identity in Exhibit E are tagged with www.NYCGENTLEMENCLUB.com, www.HOTTESTNEWYORKSTRIPPERS.com, and www.NYCGENTLEMENSCLUB.com, and being used for branding purposes.

108. Geiger's image, likeness and identity in Exhibit E are being used as a "coupon" to promote the Club's "$150 Bottles/$20.00 Hookahs/2-for-1 Drinks" during the Club's Grand Opening celebration as well as "$150 Hennessey" during the Club's Cinco De Mayo event.

109. Geiger has never been employed by Defendants nor contracted with Defendants to be a dancer at the Club.

110. Geiger has never been hired by Defendants nor contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

111. Defendants never sought permission nor authority to use or alter Geiger's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

112. Geiger never gave permission, assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

113. Defendants neither offered nor paid any remuneration to Geiger for the unauthorized use or self-serving alteration of her image, likeness or identity.

114.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Geiger's images in their market activities and business.    In doing so, Defendants have further damaged Geiger.

### Plaintiff Cielo Jean (CJ) Gibson

115.    Gibson is, and at all times relevant to this action was, a successful businesswoman and professional model with numerous accomplishments.    Gibson's business ventures include developing her own line of health supplements and fitness clothing.    As a model, Gibson was the *Import Tuner* magazine Model Search winner, is a model for the Falken Drift Team, and has appeared in magazines such as *FHM*, *American Curves* as a cover model, *Supreme*, *MuscleMag International*, *Muscle & Fitness*, *Teeze*, and in a *Bowflex* ad.    Gibson has also modeled for Short Block Technologies (SBT, Inc.), and appeared in a home workout video called ENVY.

116.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Gibson negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

117.    Gibson's image, likeness and identity are depicted in at least one photo, enclosed as **Exhibit F** to the Complaint, which has been used and altered to create the false perception that Gibson has consented or agreed to promote, advertise, market and/or endorse MLB's "OPENING DAY" event at the Club, all to benefit Defendants' commercial interests.

118.    Gibson's image, likeness and identity in Exhibit F are being used as advertising.

119.    Gibson's image, likeness and identity in Exhibit F are being used on social media.

120.    Gibson's image, likeness and identity in Exhibit F are tagged with www.hottestNewYorkStrippers.com and being used for branding purposes.

121.    Gibson's image, likeness and identity in Exhibit F are being used as a "coupon" to promote the Club's "50c Hot Wings" and "Free Admission."

122.    Gibson's image, likeness and identity in Exhibit F are being used to promote and market a third party image (Budweiser).

123.    Gibson has never been employed by Defendants nor contracted with Defendants to be a dancer at the Club.

124.    Gibson has never been hired by Defendants nor contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

125.    Defendants never sought permission nor authority to use or alter Gibson's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

126.    Gibson never gave permission, assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

127.    Defendants neither offered nor paid any remuneration to Gibson for the unauthorized use or self-serving alteration of her image, likeness or identity.

128.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Gibson's images in their market activities and business.  In doing so, Defendants have further damaged Gibson.

### *Plaintiff Vida Guerra*

129.    Guerra is, and at all times relevant to this action was, a successful professional model, host and actress with numerous accomplishments.  As a model, Guerra has been featured

in *FHM* and was named FHM's "Model of the Year." She has also appeared in or been the cover girl for the magazines *DUB*, *Smooth*, *Escape*, and *Open Your Eyes*. As a host and actress, Guerra has made multiple appearances on several Spanish language television programs such as entertainment gossip show El Gordo y la Flaca (translated to English as "The Fat Guy and The Skinny Girl"), and appeared in numerous music videos, appearing in "Shake Ya Tailfeather" (Nelly, P. Diddy and Murphy Lee, from the Bad Boys II soundtrack), "The New Workout Plan" (Kanye West, 2004), in "Obsession (No Es Amor)" (Frankie J featuring Baby Bash,) among others. Guerra has also appeared in television sponsorship commercial (e.g. Burger King's tender crisp), in sketches on Chappelle's Show and the film National Lampoon's Dorm Daze 2. Her voice was used in the video game "Scarface: The World Is Yours."

130. Guerra has over 260,000 Instagram followers.

131. In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Guerra negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

132. Guerra's image, likeness and identity are depicted on a Banner Ad Marquis prominently and conspicuously posted on the outside of the Club's building, a copy of which is enclosed as **Exhibit G** to the Complaint, and which has been used and altered to create the false perception that Guerra has consented or agreed to promote, advertise, market and/or endorse to all drivers and passersby the Club and its daily Happy Hour events and drink specials, all to benefit Defendants' commercial interests.

133. Guerra's image, likeness and identity in Exhibit G are being used as a Marquis Banner Ad.

134. Guerra's image, likeness and identity in Exhibit G are being used as advertising.

135.    Guerra has never been employed by Defendants nor contracted with Defendants to be a dancer at the Club.

136.    Guerra has never been hired by Defendants nor contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

137.    Defendants never sought permission nor authority to use or alter Guerra's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

138.    Guerra never gave permission, assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

139.    Defendants neither offered nor paid any remuneration to Guerra for the unauthorized use and self-serving alteration of her image, likeness or identity.

140.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Guerra's images in their market activities and business.  In doing so, Defendants have further damaged Guerra.

### Plaintiff Jessica (Jessa) Hinton

141.    Hinton is, and at all times relevant to this action was, a successful businesswoman, professional model, host, actress and TV personality with numerous accomplishments.  Hinton's business ventures include being named Creative Director for MAJR Media and given part ownership for her role with the company.  As a model, Hinton has been the Palms Hotel & Casino's ad campaign spokesmodel, a *Playboy* "Playmate of the Month," has been featured as the front cover model for magazines such as *FHM*, *Kandy* Magazine, *MMA*

Sports Magazine, *Guitar World* and *Muscle & Fitness* Magazine. She served as the spokesmodel for Milwaukee's Best Beer in conjunction with Playboy Enterprises, the spokesmodel for Affliction Clothing, Enzo Milano Hair Products, REVIV Wellness Spa, Protein World and has ongoing modeling contracts with Rhonda Shear Shapewear, Leg Avenue and Roma Costume. Her images have appeared on billboards, magazines, posters, and multiple forms of electronic media. As an actress, Hinton has appeared in multiple national television commercials, on "Baywatch" and "7th Heaven." Hinton has also been the host of Victory Poker interviewing poker players and celebrities and as an interview personality for Top Rank Boxing, conducting interviews of Manny Pacquiao and Shane Mosley. Hinton has also been a guest host for Los Angeles television station KTLA.

142.    Hinton has 1 million Instagram followers.

143.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Hinton negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

144.    Hinton's image, likeness and identity are depicted in at least one photo, enclosed as **Exhibit H** to the Complaint, which has been used and altered to create the false perception that Hinton has consented or agreed to promote, advertise, market and/or endorse the Club's "HALLOWEEN: Hottest Costume Party in New York City," event to benefit Defendants' commercial interests.

145.    Hinton's image, likeness and identity in Exhibit H are being used as advertising.

146.    Hinton's image, likeness and identity in Exhibit H are being used on social media.

147.    Hinton's image, likeness and identity in Exhibit H are tagged with  "#bigtitties," #exoticdancer," and "#stripClubs" and www.nycgentlemenClub.com and being used for branding purposes.

148.    Hinton's image, likeness and identity in Exhibit H are being used for an additional, foreseeable use by *Xtreme* Magazine.

149.    Hinton has never been employed by Defendants nor contracted with Defendants to be a dancer at the Club.

150.    Hinton has never been hired by Defendants nor contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

151.    Defendants never sought permission nor authority to use or alter Hinton's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

152.    Hinton never gave permission, assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

153.    Defendants neither offered nor paid any remuneration to Hinton for the unauthorized use and self-serving alteration of her image, likeness or identity.

154.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Hinton's images in their market activities and business.  In doing so, Defendants have further damaged Hinton.

***Plaintiff Rosie Olivia Jones***

155.    Jones is, and at all times relevant to this action was, a successful professional model and actress with numerous accomplishments.    As a model, Jones has appeared in magazines such as *FHM*, *Nuts*, *Loaded*, and *Front*.    As an actress, Jones appeared in the music video "You Can Dance" by Bryan Ferry, the music video for Professor Green's "Be Good To Green," and multiple music video clips of the German comedy band Keule.    Jones has also been involved in various high profile service efforts, including raising money for "Help for Heroes."

156.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Jones negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

157.    Jones' image, likeness and identity are depicted in at least two photos, enclosed as **Exhibit I** to the Complaint, one of which have been used and altered to create the false perception that Jones has consented or agreed to promote, advertise, market and/or endorse the Club's "SERGIO'S [CHEWY] BIRTHDAY BLAST," and the other of which has been used and similarly altered to promote, advertise, market and/or endorse the Club's daily lunch events ("*NOW OPEN FOR LUNCH*"), all to benefit Defendants' commercial interests.

158.    Jones' image, likeness and identity in Exhibit I are being used as advertising.

159.    Jones' image, likeness and identity in Exhibit I are being used on social media.

160.    Jones' image, likeness and identity in Exhibit I are tagged with www.hottestNewYorkStrippers.com and www.nycgentlemenClub.com and being used for branding purposes.

161.    Jones' image, likeness and identity in Exhibit I are also being used to promote third party usage.

162.    Jones' image, likeness and identity in Exhibit I are being used as a "coupon" to promote the Club's "Saturday Night $150 Ciroc."

163.    Jones has never been employed by Defendants nor contracted with Defendants to be a dancer at the Club.

164.    Jones has never been hired by Defendants nor contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

165.    Defendants never sought permission nor authority to use or alter Jones' image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

166.    Jones never gave permission, assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

167.    Defendants neither offered nor paid any remuneration to Jones for the unauthorized use or self-serving alteration of her image, likeness or identity.

168.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Jones' images in their market activities and business.  In doing so, Defendants have further damaged Jones.

### *Plaintiff Jessica (Charm) Killings*

169.    Killings is, and at all times relevant to this action was, a successful professional model and actress.  As a model, Killings has appeared in *Playboy*, *Maxim*, *FHM*, *King* Magazine, *SHOW*, *Blackmen*, *Straight Stuntin*, *Smooth*, *Mixed* Magazine, *Hip Hop Wired*, *Low Rider* Magazine and on the cover of *Dimez*.  As an actress and video star, Killings has starred in

videos for Tyga, Jay Sean with Nicki Minaj, Bow Wow, Big Sean with Chris Brown, Baby Bash with Slim Thug and Far East with Snoop Dogg.

170.    Killings has over One million Instagram followers.

171.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Killings negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

172.    Killings' image, likeness and identity are depicted in at least two photos, enclosed as **Exhibit J** to the Complaint, one of which has been used and altered to create the false perception that Killings has consented or agreed to promote, advertise, market and/or endorse the Club's "BOOK YOUR BACHELOR, BACHELORETTE OR CORPORATE EVENTS," and the other of which has been used and similarly altered to promote, advertise, market and/or endorse the Club's "$80 PRIVATE LAP DANCE," to benefit Defendants' commercial interests.

173.    Killings' image, likeness and identity in Exhibit J are being used as advertising.

174.    Killings' image, likeness and identity in Exhibit J are being used on social media.

175.    Killings' image, likeness and identity in Exhibit J are tagged with www.hottestNewYorkStrippers.com, www.nycgentlemenClub.com, and "#adultentertainment" and being used for branding purposes.

176.    Killings' image, likeness and identity in Exhibit J are being used as a "coupon" to promote the Club's "$80 PRIVATE LAP DANCE," among others.

177.    Killings has never been employed by Defendants nor contracted with Defendants to be a dancer at the Club.

178.    Killings has never been hired by Defendants nor contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

179.    Defendants never sought permission nor authority to use or alter Killings' image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

180.    Killings never gave permission, assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants, the Club or any Club event.

181.    Defendants neither offered nor paid any remuneration to Killings for the unauthorized use and self-serving alteration of her image, likeness or identity.

182.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Killings' images in their market activities and business.    In doing so, Defendants have further damaged Killings.

### *Plaintiff Joanna Krupa*

183.    Krupa is, and at all times relevant to this action was, a successful professional model, actress and television personality, and spokesperson with numerous accomplishments. As a model, Krupa has appeared twice on the cover of *Playboy*, is a lingerie model for Frederick's of Hollywood, and appeared on the covers of such magazines as *Envy*, *FHM*, *Personal*, *Inside Sport*, *Stuff*, *Steppin' Out*, *Teeze*, *Shape* and *Maxim*, in which she was named the "Sexiest Swimsuit Model in the World."    As an actress and television personality, Krupa has appeared in the film *Max Havoc: Curse of the Dragon*, the television show *Superstars*, made multiple appearances on the CSI and Las Vegas television series, and appeared as a contestant on Season 9 of ABC's *Dancing with the Stars*.    Additionally, since 2010 Krupa has been head judge of *Poland's Next Top Model*, and is a cast member of Bravo's *The Real Housewives of Miami*.

She has also appeared as a guest on *Jimmy Kimmel*, *Chelsea Lately*, *Jenny Jones*, *Guys Choice*, Howard Stern's *On Demand*, *The View*, *Poker 2 night*, *The Wendy Williams Show*.

184.    Krupa has nearly 500,000 Instagram followers and over eight hundred thousand Facebook followers.

185.    Krupa is a spokeswoman for People for the Ethical Treatment of Animals ("PETA") worldwide.

186.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Krupa negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

187.    Krupa's image, likeness and identity are depicted in at least one photo, enclosed as **Exhibit K** to the Complaint, which has been used and altered to create the false perception that Krupa has consented and agreed to promote, advertise, market and/or endorse the Club as a "BRAND NEW UPSCALE GENTLEMENS CLUB," its "V.I.P & CHAMPANGE [sic] ROOMS," "PRIVATE LAP DANCE AREA," and "FULL SERVICE BAR & KITCHEN," that the Club would be "HOSTING ALL MAJOR SPORTING EVENTS ON OUR BIG SCREENS," and announcing the Club's "OUTDOOR TIKI BAR COMING SOON!," all to benefit Defendants' commercial interests.

188.    Krupa's image, likeness and identity in Exhibit K are being used as advertising.

189.    Krupa's image, likeness and identity in Exhibit K are being used on social media.

190.    Krupa's image, likeness and identity in Exhibit K are tagged with www.hottestNewYorkStrippers.com and being used for branding purposes.

191.    Krupa's image, likeness and identity in Exhibit K are further being as a Banner image for the Club and the Club's Facebook page.

192.    Krupa has never been employed by Defendants nor contracted with Defendants to be a dancer at the Club.

193.    Krupa has never been hired by Defendants nor contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

194.    Defendants never sought permission nor authority to use or alter Krupa's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

195.    Krupa never gave permission, assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

196.    Defendants neither offered nor paid any remuneration to Krupa for the unauthorized use or self-serving alteration of her image, likeness or identity.

197.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Krupa's images in their market activities and business.   In doing so, Defendants have further damaged Krupa.

### *Plaintiff Dessie Mitcheson*

198.    Mitcheson is, and at all times relevant to this action was, a successful professional model, actress, television personality and spokeswoman with numerous accomplishments.  As a model, Mitcheson has been the face of *Playboy* Intimates, the face of MGM Grand Las Vegas, and Miss Pennsylvania Intercontinental.   She has been featured multiple times in *Maxim* magazine, and been named *Maxim's* "Hometown Hottie." As a television personality, Mitcheson was featured as the main Tecate Beer ring girl for the *Mayweather v Pacquiao* fight in April

2015.    Mitcheson has been featured by national advertisers such as Crest toothpaste, Tecate, Roma Costumes and J. Valentine, among others.

199.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Mitcheson negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

200.    Mitcheson's image, likeness and identity are depicted in at least one photo, enclosed as **Exhibit L** to the Complaint, which has been used and altered to create the false perception that Mitcheson has consented or agreed to promote, advertise, market and/or endorse the Club's "HALLOWEEN BASH," to benefit Defendants' commercial interests.

201.    Mitcheson's image, likeness and identity in Exhibit L are being used as advertising.

202.    Mitcheson's image, likeness and identity in Exhibit L are being used on social media.

203.    Mitcheson's image, likeness and identity in Exhibit L are tagged with "#strippers" and #nycstripClubs" and being used for branding purposes.

204.    Mitcheson's image, likeness and identity in Exhibit L are being used as a "coupon" to promote the Club's "1/2 Price Drinks/Free Entry Till 8PM" and "2-Bottles & Hookah $350."

205.    Mitcheson has never been employed by Defendants nor contracted with Defendants to be a dancer at the Club.

206.    Mitcheson has never been hired by Defendants nor contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

207.    Defendants never sought permission nor authority to use or alter Mitcheson's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

208.    Mitcheson never gave permission, assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants, the Club or any Club event.

209.    Defendants neither offered nor paid any remuneration to Mitcheson for the unauthorized use or self-serving alteration of her image, likeness or identity.

210.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Mitcheson's images in their market activities and business. In doing so, Defendants have further damaged Mitcheson.

### Plaintiff Carissa Rosario

211.    Rosario is, and at all times relevant to this action was, a successful businesswoman, professional model, brand spokesmodel, actress and television personality with numerous accomplishments. Rosario's business ventures include teaming with designers to create her own perfume line, "Young And Fresh" by Christopher Joseph, and producing a workout DVD with Super Bowl Champion Antrel Rolle from the New York Giants. As a model, Rosario has been featured on the covers of 15 international and national magazines, such as *Vogue Mexico*, *GQ South Africa*, *GQ Mexico*, *Maxim Espanol*, *Maxim UK*, *Maxim USA*, *FHM Turkey* and *FHM Croatia*. Rosario is currently ranked #1 on Google as the most searched professional *Maxim* model in the world. Rosario is also the spokesmodel for Monster Energy and Budweiser Puerto Rico. As an actress and television personality, Rosario stars on the Style

Network's "Model Genius," had the lead role in the film "Ride Sweet, Die Slow," appeared on ABC's "The Big Time," and hosted the show "Como TV" for Telemundo. Rosario has also appeared in numerous commercials including Budweiser and K-Swiss.

212. Rosario has over 700,000 Facebook friends and 360,000 Instagram followers.

213. In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Rosario negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

214. Rosario's image, likeness and identity are depicted in at least one photo, enclosed as **Exhibit M** to the Complaint, which has been used and altered to create the false perception that Rosario has consented or agreed to promote, advertise, market and/or endorse the Club's "HALLOWEEN Hottest Costume Party in New York City" event, to benefit Defendants' commercial interests.

215. Rosario's image, likeness and identity in Exhibit M are being used as advertising.

216. Rosario's image, likeness and identity in Exhibit M are being used on social media.

217. Rosario's image, likeness and identity in Exhibit M are tagged with "#bigtitties," #exoticdancer," "#polelife" and "#stripClubs" and being used for branding purposes."

218. Rosario's image, likeness and identity in Exhibit M are being used for an additional, foreseeable use by *Xtreme* Magazine.

219. Rosario has never been employed by Defendants nor contracted with Defendants to be a dancer at the Club.

220. Rosario has never been hired by Defendants nor contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

221.    Defendants never sought permission nor authority to use or alter Rosario's image, likeness or identity to advertise, promote, market or endorse Defendants, the Club or any Club event.

222.    Rosario never gave permission, assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

223.    Defendants neither offered nor paid any remuneration to Rosario for the unauthorized use and self-serving alteration of her image, likeness or identity.

224.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Rosario's images in their market activities and business.   In doing so, Defendants have further damaged Rosario.

### Plaintiff Gabby Jeanne Saucedo

225.    Saucedo is a professional model, actress and social media sensation with numerous accomplishments.   As a model, Saucedo has appeared in numerous import car magazines, including as the cover model for *Import Tuner, Super Street,* and *Super Street Bike* magazines.   Saucedo has also been featured on the gaming website, IGN.com, in the swimsuit edition of Ugo.com, and her image has been used to advertise a number of different skateboards produced by SK8 Mafia, phone covers, and other products.   She has also starred in music videos with such artists as Marquis Houston, Rick Ross, Snoop Dog, Xzibit, Too Short and E-40.

226.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Saucedo negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

227.     Saucedo's image, likeness and identity are depicted in at least one photo, enclosed as **Exhibit N** to the Complaint, which has been used and altered to create the false perception that Saucedo has consented or agreed to promote, advertise, market and/or endorse the Club's "XXX Football Season" events," to benefit Defendants' commercial interests.

228.     Saucedo's image, likeness and identity in Exhibit N are being used as advertising.

229.     Saucedo's image, likeness and identity in Exhibit N are being used on social media.

230.     Saucedo's image, likeness and identity in Exhibit N are tagged with www.hottestNewYorkStrippers.com, www.NYCGENTLEMENCLUB.com, and www.NYCGENTLEMENSCLUB.com, and being used for branding purposes.

231.     Saucedo has never been employed by Defendants nor contracted with Defendants to be a dancer at the Club.

232.     Saucedo has never been hired by Defendants nor contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

233.     Defendants never sought permission nor authority to use or alter Saucedo's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

234.     Saucedo never gave permission, assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

235.     Defendants neither offered nor paid any remuneration to Saucedo for the unauthorized use and self-serving alteration of her image, likeness or identity.

236.   Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Saucedo's images in their market activities and business. In doing so, Defendants have further damaged Saucedo.

*Plaintiff Tiffany Toth*

237.   Toth is, and at all times relevant to this action was, a successful professional model with numerous accomplishments. As a model, Toth has been a *Playboy* "Playmate of the Month," a *Playboy* "Cyber Girl of the Week" and *Playboy* "Cyber Girl of the Month." She has also been featured in such magazines as *Maxim, Super Street Bike*, *Import Tuner*, *Sport Truck*, *Iron Man*, and *Seventeen*.

238.   Toth has more than 370,000 Instagram followers, over one million (1,000,000) Facebook followers, and is paid for social media product endorsements.

239.   In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Toth negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

240.   Toth's image, likeness and identity are depicted in at least two photos, enclosed as **Exhibit O** to the Complaint, one of which has been used and altered to create the false perception that Toth has consented or agreed to promote, advertise, market and/or endorse the Club and its promotion and airing of the "UFC 165" fight between Jon Jones and Alexander Gustafsson, and the other of which has been used and similarly altered to promote, advertise, market and/or endorse the Club's "ST. PATRICKS' CELEBRATION," all to benefit Defendants' commercial interests.

241.   Toth's image, likeness and identity in Exhibit O are being used as advertising.

242.    Toth's image, likeness and identity in Exhibit O are being used on social media.

243.    Toth's image, likeness and identity in Exhibit O are tagged with www.HottestNewYorkStrippers.com, www.NYCGENTLEMENSCLUB.com, and being used for branding purposes.

244.    Toth's image, likeness and identity in Exhibit O are being used as a "coupon" to promote the Club's "2 Bottles & a Hookah for $300 till 11pm" and "Free Admission until 8pm."

245.    Toth has never been employed by Defendants nor contracted with Defendants to be a dancer at the Club.

246.    Toth has never been hired by Defendants nor contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

247.    Defendants never sought permission nor authority to use or alter Toth's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

248.    Toth never gave permission, assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

249.    Defendants neither offered nor paid any remuneration to Toth for the unauthorized use or self-serving alteration of her image, likeness or identity.

250.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Toth's images in their market activities and business. In doing so, Defendants have further damaged Toth.

### Plaintiff Sara Underwood

251.    Underwood is, and at all times relevant to this action was, a successful professional model, actress, television personality, host and spokeswoman with numerous accomplishments.  As a model, Underwood was featured in *Playboy's* "Girls of the Pac-10," was a *Playboy* "Playmate of the Month," and *Playboy* "Playmate of the Year."  As an actress, Underwood worked as a "fight jock" announcer for the Blackbelt TV cable network, she co-hosted G4's *Attack of the Show*, has hosted *The Feed*, and has starred in numerous commercials.

252.    Underwood has more than one million (1,000,000) Instagram followers.

253.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Underwood negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

254.    Underwood's image, likeness and identity are depicted in at least one photo, enclosed as **Exhibit P** to the Complaint, which has been used and altered to create the false perception that Underwood has consented or agreed to promote, advertise, market and/or endorse the Club's "HALLOWEEN BASH," to benefit Defendants' commercial interests.

255.    Underwood's image, likeness and identity in Exhibit P are being used as advertising.

256.    Underwood's image, likeness and identity in Exhibit P are being used on social media.

257.    Underwood's image, likeness and identity in Exhibit P are tagged with "#strippers" and #nycstripClubs" and being used for branding purposes.

258.    Underwood's image, likeness and identity in Exhibit P are being used as a "coupon" to promote CJNYC's "1/2 Price Drinks/Free Entry Till 8PM" and "2-Bottles & Hookah $350."

259.    Underwood has never been employed by Defendants nor contracted with Defendants to be a dancer at the Club.

260.    Underwood has never been hired by Defendants nor contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

261.    Defendants never sought permission or authority to use or alter Underwood's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

262.    Underwood never gave permission, assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

263.    Defendants neither offered nor paid any remuneration to Underwood for the unauthorized use and self-serving alteration of her image, likeness or identity.

264.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Underwood's images in their market activities and business.  In doing so, Defendants have further damaged Underwood.

### *Plaintiff Sandra Valencia*

265.    Valencia is, and at all times relevant to this action was, a successful professional model with numerous accomplishments.  She is regarded as one of the top models in her home country of Colombia.  Valencia has modeled in Ecuador, Peru, The Dominican Republic,

Mexico and Venezuela. She has worked with clients such as Diesel, Americanino, Leonisa, Chevignon, and Onde de Mar, and is the contract face of BESAME lingerie.

266.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Valencia negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

267.    Valencia's image, likeness and identity are depicted in at least one photo, enclosed as **Exhibit Q** to the Complaint, which has been used and altered to create the false perception that Valencia has consented or agreed to promote, advertise, market and/or endorse the Club and its "Columbian Independents Festival," to benefit Defendants' commercial interests.

268.    Valencia's image, likeness and identity in Exhibit Q are being used as advertising.

269.    Valencia's image, likeness and identity in Exhibit Q are being used on social media.

270.    Valencia's image, likeness and identity in Exhibit Q are tagged with "#strippers" and "#gentlemensClub" and being used for branding purposes.

271.    Valencia has never been employed by Defendants nor contracted with Defendants to be a dancer at the Club.

272.    Valencia has never been hired by Defendants nor contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

273.    Defendants never sought permission nor authority to use or alter Valencia's image, likeness or identity to advertise, promote, market or endorse Defendants business, the Club or any Club event.

274.    Valencia never gave permission, assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

275.    Defendants neither offered nor paid any remuneration to Valencia for the unauthorized use or self-serving alteration of her image, likeness or identity.

276.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Valencia's images in their market activities and business.  In doing so, Defendants have further damaged Valencia.

### *Plaintiff Irina Voronina*

277.    Voronina is, and at all times relevant to this action was, a successful professional model, spokesmodel and actress with numerous accomplishments.  As a model, Voronina has modeled internationally for more than 14 years, was a *Playboy* "Playmate of the Month" and has been named "Model Of the Year" by *Kandy* Magazine based on the highest number of digital issue downloads on iPad and iPhone.  Voronina has also modeled for international brands such as SKYY Vodka, Miller Lite, Michelob Ultra, Bacardi, and Sisley & Detour, among others. Additionally, Voronina has appeared in numerous magazines including *FHM*, *Maxim*, *Max* (Italy), *Ocean*, *Shape*, *944*, *Knockout*, *Q* (UK), and *People* (Australia).  Voronina was a St Pauli Girl Beer spokes model, led a year-long public relations tour across the United States for the beer brand, and became first ever St. Pauli Girl to ring the NYSE closing bell.  As a spokesmodel, Voronina was the main host of *Playboy* Radio's weekly shows "Playmate Club" and interviewed hundreds of celebrities live on air.  As an actress, Voronina has appeared in *Reno 911*, *Balls of*

*Fury, Towelhead,*  as well as television shows *Svetlana*, on the live action show *Saul of the Mole Men*, and as a guest star on Nickelodeon's *iCarly*.

278.    Voronina has more than  2 million Facebook fans.

279.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Voronina negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

280.    Voronina's image, likeness and identity are depicted in at least one photo, enclosed as **Exhibit R** to the Complaint, which has been used and altered to create the false perception that Voronina has consented or agreed to promote, advertise, market and/or endorse the Club, to benefit Defendants' commercial interests.

281.    Voronina's image, likeness and identity in Exhibit R are being used as advertising.

282.    Voronina's image, likeness and identity in Exhibit R are being used on social media.

283.    Voronina's image, likeness and identity in Exhibit R are tagged with "#hotgirls," "#drinkspecials," "#sexy" "#hotbartenders" and "#mondaynightfootball" and being used for branding purposes.

284.    Voronina's image, likeness and identity in Exhibit R are being used as a "coupon" to promote CJNYC's "#FreeAdmission for all #veterans with #military ID."

285.    Voronina has never been employed by Defendants nor contracted with Defendants to be a dancer at the Club.

286.    Voronina has never been hired by Defendants nor contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

287.   Defendants never sought permission nor authority to use or alter Voronina's image, likeness or identity to advertise, promote, market or endorse Defendants business, the Club or any Club event.

288.   Voronina never gave permission, assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

289.   Defendants neither offered nor paid any remuneration to Voronina for the unauthorized use and self-serving alteration of her image, likeness or identity.

290.   Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Voronina's images in their market activities and business.  In doing so, Defendants have further damaged Voronina.

### *Plaintiff Heather Rae Young*

291.   Young is, and at all times relevant to this action was, a successful businesswoman, professional model, actress, and spokeswoman. with numerous accomplishments.  Her business ventures include a successful career in real estate.  As a model, Young was a *Playboy* "Playmate of the Month," has appeared in countless swimwear, lingerie, and fashion catalogs such as *Super Star Swimwear*, *Calao Swimwear*, *Carrie Amber Intimates*, *Trashy Lingerie*, *7 Til Midnight*, *Foreplay*, *Affliction Clothing Campaign,* among others.  Young has also been featured in numerous car and motorcycle enthusiast magazines such as *Import Tuner*, *Hot Rod Deluxe*, *Super Street Bike*, *Low Rider* and *Sport Truck*.  Young is a spokesperson for companies such as KIA Motors, Shake Weight and Blue Mountain State.  As an actress, Young has appeared in *Entourage*, *The Tonight Show w/ Jay Leno*, and on Fox's *Till Death*.

292.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Young negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

293.    Young's image, likeness and identity are depicted in at least one photo, enclosed as **Exhibit S** to the Complaint, which has been used and altered to create the false perception that Young has consented or agreed to promote, advertise, market and/or endorse the Club and the "FRANK'S Birthday" event, all to benefit Defendants' commercial interests.

294.    Young's image, likeness and identity in Exhibit S are being used as advertising.

295.    Young's image, likeness and identity in Exhibit S are being used on social media.

296.    Young's image, likeness and identity in Exhibit S are tagged with www.HottestNewYorkStrippers.com, and www.NYCGENTLEMENSCLUB.com and are being used for branding purposes.

297.    Young's image, likeness and identity in Exhibit S are being used as well to promote a third party event held at CJNYC, to wit: "FRANK'S Birthday."

298.    Young has never been employed by Defendants nor contracted with Defendants to be a dancer at the Club.

299.    Young has never been hired by Defendants nor contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

300.    Defendants never sought permission nor authority to use or alter Young's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

301.    Young never gave permission, assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

302.    Defendants neither offered nor paid any remuneration to Young for the unauthorized use or self-serving alteration of her image, likeness or identity.

303.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Young's images in their market activities and business.   In doing so, Defendants have further damaged Young.

## CAUSES OF ACTION

### *Jessica Burciaga's Causes of Action*

### BURCIAGA COUNT I
(Violation of the Lanham Act, 15 U.S.C. § 1125:
False Endorsement/Unfair Competition as to all Defendants)

304.    Burciaga hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

305.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* apply to Defendants and protect Burciaga from the conduct described herein.   Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a).

306.    Defendants used Burciaga's image, likeness and identity as described herein without authority in interstate commerce in order to create the false and misleading impression that Burciaga worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club

or the Club's business activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, or the Club's events and activities.

307. Defendants' unauthorized use and alteration of Burciaga's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

308. Defendants' unauthorized use and alteration of Burciaga's image, likeness and identity as described herein constitutes a false endorsement and a false association that is likely to confuse consumers, including actual and prospective patrons to the Club, as to whether Burciaga worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

309. Upon information and belief, Defendants' unauthorized use or alteration of Burciaga's image, likeness and identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Burciaga worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

310. Defendants knew or should have known that their unauthorized use and alteration of Burciaga's image, likeness and identity would cause consumer confusion as described above.

311. Defendants' unauthorized use and alteration of Burciaga's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

312.    Defendants wrongful conduct as described herein was willful.

313.    Defendants unauthorized use of Burciaga's image, likeness and identity has damaged Burciaga in an amount to be determined at trial.

**BURCIAGA COUNT II**
**(Violation of N.Y. Civ. Rights Law §§ 50-51 as to all Defendants)**

314.    Burciaga hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

315.    Defendants altered Burciaga's image to create the false appearance, perception and impression that Burciaga worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

316.    Defendants published such altered Burciaga images through online advertisements and through various social media outlets as described herein that were used, operated, owned, controlled, and/or managed by Defendants for advertising and trade purposes, that were designed to promote the Club, attract business to the Club and generate revenue for Defendants and that, upon information and belief, did in fact attract patrons and generate revenue for the Club and Defendants.

317.    At no time did Defendants ever receive permission or consent – whether written or otherwise – to use or alter Burciaga's images, likeness or identity in any way, including but not limited to, online advertisements or social media outlets as described herein.

318.    No applicable privilege or authorization exists for Defendants' use of Burciaga's image, likeness or identity.

319. Defendants were aware at all relevant times that they never received Burciaga's authority, permission or consent to use or alter her images, likeness or identity in any way, through any media and for any purpose, including for the business purpose of promoting the Club, attracting business and generating revenue for Defendants.

320. At no time have Defendants ever compensated Burciaga for the unauthorized use or alteration of her image, likeness or identity.

321. As described herein, Defendants violated Burciaga's right of privacy, violated her right of publicity, misappropriated her image, likeness and identity, and altered and published same without Burciaga's authority or consent.

322. Defendants' misconduct as described herein violates N.Y. Civil Rights Law §§ 50-51 and was wrongful.

323. Defendants' misconduct was knowing and willful.

324. Defendants' misconduct evinces intentional action and/or reckless disregard of Burciaga's rights.

325. Due to Defendants' violation of Burciaga's rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Burciaga has been damaged in an amount to be determined at trial.

326. Pursuant to Section 51 of the N.Y. Civil Rights Act, Burciaga further requests an Order permanently enjoining Defendants from further violating Burciaga's rights of privacy and publicity.

327. Pursuant to Section 51 of the N.Y. Civil Rights Act, Burciaga further requests an award of punitive damages in an amount to be determined at trial but in no case less than twice the amount of actual damages awarded at trial.

## BURCIAGA COUNT III
### (Violation of N.Y. General Business Law § 349:
### N.Y. Deceptive Trade Practices Act as to all Defendants)

328. Burciaga hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

329. Defendants used, operated, owned, controlled, and/or managed, among others, www.NYCGENTLEMENCLUB.com, www.HOTTESTNEWYORKSTRIPPERS.com, and www.NYCGENTLEMENSCLUB.com, as well as various social media outlets such as Facebook, Twitter, Instagram and Tumbler, among others, in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

330. Defendants' use and operation of the foregoing websites and social media accounts was consumer-oriented in nature and directed to a local, national and international clientele.

331. Defendants published Burciaga's image, likeness and identity on the foregoing websites and social media outlets in order to create the false appearance, perception and impression about Burciaga's affiliation with the Club, or participation in or endorsement of the advertised events and activities at the Club, among other objectives.

332. In publishing Burciaga's image, likeness and identity as described herein, Defendants intended to mislead the public.

333. At all times, Defendants knew Burciaga was not affiliated with the Club, knew that Burciaga was not going to participate in any Club events and activities, and knew Burciaga did not endorse Defendants' business, the Club or the Club's events and activities.

334. Defendants' publication of Burciaga's image, likeness and identity as described herein was done without Burciaga's consent or authorization.

335.    Defendants' unauthorized publication of Burciaga's image, likeness and identity as described herein was misleading in a material respect because it created the false appearance, perception and impression that Burciaga, in fact, was in some way affiliated with the Club, participated in the advertised events and activities, and/or endorsed Defendants' business, the Club or the Club's events and activities.

336.    Defendants' unauthorized and misleading publication of Burciaga's image, likeness and identity on the foregoing websites and social media outlets as described herein have damaged Burciaga's reputation and marketability in an amount to be determined at trial.

### *Alana Campos' Causes of Action*

### <u>CAMPOS COUNT I</u>
### (Violation of the Lanham Act, 15 U.S.C. § 1125:
### False Endorsement/Unfair Competition as to all Defendants)

337.    Campos hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

338.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* apply to Defendants and protect Campos from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a).

339.    Defendants used Campos' image, likeness and identity as described herein without authority in interstate commerce in order to create the false and misleading impression that Campos worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, or consented to or authorized Defendants' or the Club's usage of

her images in order to advertise, promote, and market Defendants business, or the Club's events and activities.

340.    Defendants' unauthorized use and alteration of Campos' image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

341.    Defendants' unauthorized use and alteration of Campos' image, likeness and identity as described herein constitutes a false endorsement and a false association that is likely to confuse consumers, including actual and prospective patrons to the Club, as to whether Campos worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

342.    Upon information and belief, Defendants' unauthorized use or alteration of Campos' image, likeness and identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Campos worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

343.    Defendants knew or should have known that their unauthorized use and alteration of Campos 's image, likeness and identity would cause consumer confusion as described above.

344.    Defendants' unauthorized use and alteration of Campos' image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

345.    Defendants wrongful conduct as described herein was willful.

346.    Defendants unauthorized use of Campos' image, likeness and identity has damaged Campos in an amount to be determined at trial.

## CAMPOS COUNT II
### (Violation of N.Y. Civ. Rights Law §§ 50-51 as to all Defendants)

347.    Campos hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

348.    Defendants altered Campos' image to create the false appearance, perception and impression that Campos worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

349.    Defendants published such altered Campos images through online advertisements and through various social media outlets as described herein that were used, operated, owned, controlled, and/or managed by Defendants for advertising and trade purposes, that were designed to promote the Club, attract business to the Club and generate revenue for Defendants and that, upon information and belief, did in fact attract patrons and generate revenue for the Club and Defendants.

350.    At no time did Defendants ever receive permission or consent – whether written or otherwise – to use or alter Campos' images, likeness or identity in any way, including but not limited to, online advertisements or social media outlets as described herein.

351.    No applicable privilege or authorization exists for Defendants' use of Campos' image, likeness or identity.

352.    Defendants were aware at all relevant times that they never received Campos' authority, permission or consent to use or alter her images, likeness or identity in any way,

through any media and for any purpose, including for the business purpose of promoting the Club, attracting business and generating revenue for Defendants.

353.    At no time have Defendants ever compensated Campos for the unauthorized use or alteration of her image, likeness or identity.

354.    As described herein, Defendants violated Campos' right of privacy, violated her right of publicity, misappropriated her image, likeness and identity, and altered and published same without Campos' authority or consent.

355.    Defendants' misconduct as described herein violates N.Y. Civil Rights Law §§ 50-51 and was wrongful.

356.    Defendants' misconduct was knowing and willful.

357.    Defendants' misconduct evinces intentional action and/or reckless disregard of Campos' rights.

358.    Due to Defendants' violation of Campos' rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Campos has been damaged in an amount to be determined at trial.

359.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Campos further requests an Order permanently enjoining Defendants from further violating Campos' rights of privacy and publicity.

360.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Campos further requests an award of punitive damages in an amount to be determined at trial but in no case less than twice the amount of actual damages awarded at trial.

## CAMPOS COUNT III
### (Violation of N.Y. General Business Law § 349:
### N.Y. Deceptive Trade Practices Act as to all Defendants)

361.    Campos hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

362.    Defendants used, operated, owned, controlled, and/or managed, among others, www.NYCGENTLEMENCLUB.com, www.HOTTESTNEWYORKSTRIPPERS.com, and www.NYCGENTLEMENSCLUB.com, as well as various social media outlets such as Facebook, Twitter, Instagram and Tumbler, among others, in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

363.    Defendants' use and operation of the foregoing websites and social media accounts was consumer-oriented in nature and directed to a local, national and international clientele.

364.    Defendants published Campos' image, likeness and identity on the foregoing websites and social media outlets in order to create the false appearance, perception and impression about Campos' affiliation with the Club, or participation in or endorsement of the advertised events and activities at the Club, among other objectives.

365.    In publishing Campos' image, likeness and identity as described herein, Defendants intended to mislead the public.

366.    At all times, Defendants knew Campos was not affiliated with the Club, knew that Campos was not going to participate in any Club events and activities, and knew Campos did not endorse Defendants' business, the Club or the Club's events and activities.

367.    Defendants' publication of Campos' image, likeness and identity as described herein was done without Campos' consent or authorization.

368.    Defendants' unauthorized publication of Campos' image, likeness and identity as described herein was misleading in a material respect because it created the false appearance, perception and impression that Campos, in fact, was in some way affiliated with the Club, participated in the advertised events and activities, and/or endorsed Defendants' business, the Club or the Club's events and activities.

369.    Defendants' unauthorized and misleading publication of Campos' image, likeness and identity on the foregoing websites and social media outlets as described herein have damaged Campos' reputation and marketability in an amount to be determined at trial.

### *Paola Canas' Causes of Action*

### CANAS COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125:
### False Endorsement/Unfair Competition as to all Defendants)

370.    Canas hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

371.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* apply to Defendants and protect Canas from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a).

372.    Defendants used Canas' image, likeness and identity as described herein without authority in interstate commerce in order to create the false and misleading impression that Canas worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, or consented to or authorized Defendants' or the Club's usage of her

images in order to advertise, promote, and market Defendants business, or the Club's events and activities.

373.    Defendants' unauthorized use and alteration of Canas' image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

374.    Defendants' unauthorized use and alteration of Canas' image, likeness and identity as described herein constitutes a false endorsement and a false association that is likely to confuse consumers, including actual and prospective patrons to the Club, as to whether Canas worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

375.    Upon information and belief, Defendants' unauthorized use or alteration of Canas' image, likeness and identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Canas worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

376.    Defendants knew or should have known that their unauthorized use and alteration of Canas' image, likeness and identity would cause consumer confusion as described above.

377.    Defendants' unauthorized use and alteration of Canas' image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

378.    Defendants wrongful conduct as described herein was willful.

379.    Defendants unauthorized use of Canas' image, likeness and identity has damaged Canas in an amount to be determined at trial.

## CANAS COUNT II
**(Violation of N.Y. Civ. Rights Law §§ 50-51 as to all Defendants)**

380.    Canas hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

381.    Defendants altered Canas' image to create the false appearance, perception and impression that Canas worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

382.    Defendants published such altered Canas images through online advertisements and through various social media outlets as described herein that were used, operated, owned, controlled, and/or managed by Defendants for advertising and trade purposes, that were designed to promote the Club, attract business to the Club and generate revenue for Defendants and that, upon information and belief, did in fact attract patrons and generate revenue for the Club and Defendants.

383.    At no time did Defendants ever receive permission or consent – whether written or otherwise – to use or alter Canas' images, likeness or identity in any way, including but not limited to, online advertisements or social media outlets as described herein.

384.    No applicable privilege or authorization exists for Defendants' use of Canas' image, likeness or identity.

385.    Defendants were aware at all relevant times that they never received Canas' authority, permission or consent to use or alter her images, likeness or identity in any way,

through any media and for any purpose, including for the business purpose of promoting the Club, attracting business and generating revenue for Defendants.

386.    At no time have Defendants ever compensated Canas for the unauthorized use or alteration of her image, likeness or identity.

387.    As described herein, Defendants violated Canas' right of privacy, violated her right of publicity, misappropriated her image, likeness and identity, and altered and published same without Canas' authority or consent.

388.    Defendants' misconduct as described herein violates N.Y. Civil Rights Law §§ 50-51 and was wrongful.

389.    Defendants' misconduct was knowing and willful.

390.    Defendants' misconduct evinces intentional action and/or reckless disregard of Canas' rights.

391.    Due to Defendants' violation of Canas' rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Canas has been damaged in an amount to be determined at trial.

392.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Canas further requests an Order permanently enjoining Defendants from further violating Canas' rights of privacy and publicity.

393.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Canas further requests an award of punitive damages in an amount to be determined at trial but in no case less than twice the amount of actual damages awarded at trial.

## CANAS COUNT III
**(Violation of N.Y. General Business Law § 349:
N.Y. Deceptive Trade Practices Act as to all Defendants)**

394.    Canas hereby incorporates by reference each and every allegation set forth in the in preceding paragraphs as if fully alleged herein.

395.    Defendants used, operated, owned, controlled, and/or managed, among others, www.NYCGENTLEMENCLUB.com, www.HOTTESTNEWYORKSTRIPPERS.com, and www.NYCGENTLEMENSCLUB.com, as well as various social media outlets such as Facebook, Twitter, Instagram and Tumbler, among others, in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

396.    Defendants' use and operation of the foregoing websites and social media accounts was consumer-oriented in nature and directed to a local, national and international clientele.

397.    Defendants published Canas' image, likeness and identity on the foregoing websites and social media outlets in order to create the false appearance, perception and impression about Canas' affiliation with the Club, or participation in or endorsement of the advertised events and activities at the Club, among other objectives.

398.    In publishing Canas' image, likeness and identity as described herein, Defendants intended to mislead the public.

399.    At all times, Defendants knew Canas was not affiliated with the Club, knew that Canas was not going to participate in any Club events and activities, and knew Canas did not endorse Defendants' business, the Club or the Club's events and activities.

400.    Defendants' publication of Canas' image, likeness and identity as described herein was done without Canas' consent or authorization.

401.    Defendants' unauthorized publication of Canas' image, likeness and identity as described herein was misleading in a material respect because it created the false appearance, perception and impression that Canas, in fact, was in some way affiliated with the Club, participated in the advertised events and activities, and/or endorsed Defendants' business, the Club or the Club's events and activities.

402.    Defendants' unauthorized and misleading publication of Canas' image, likeness and identity on the foregoing websites and social media outlets as described herein have damaged Canas' reputation and marketability in an amount to be determined at trial.

### *Jaime Faith Edmondson's Causes of Action*

### EDMONDSON COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125:
### False Endorsement/Unfair Competition as to all Defendants)

403.    Edmondson hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

404.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* apply to Defendants and protect Edmondson from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a).

405.    Defendants used Edmondson's image, likeness and identity as described herein without authority in interstate commerce in order to create the false and misleading impression that Edmondson worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, or consented to or authorized Defendants' or the Club's

usage of her images in order to advertise, promote, and market Defendants business, or the Club's events and activities.

406.    Defendants' unauthorized use and alteration of Edmondson's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

407.    Defendants' unauthorized use and alteration of Edmondson's image, likeness and identity as described herein constitutes a false endorsement and a false association that is likely to confuse consumers, including actual and prospective patrons to the Club, as to whether Edmondson worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

408.    Upon information and belief, Defendants' unauthorized use or alteration of Edmondson's image, likeness and identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Edmondson worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

409.    Defendants knew or should have known that their unauthorized use and alteration of Edmondson's image, likeness and identity would cause consumer confusion as described above.

410.    Defendants' unauthorized use and alteration of Edmondson's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

411.    Defendants wrongful conduct as described herein was willful.

412.    Defendants unauthorized use of Edmondson's image, likeness and identity has damaged Edmondson in an amount to be determined at trial.

## EDMONDSON COUNT II
### (Violation of N.Y. Civ. Rights Law §§ 50-51 as to all Defendants)

413.    Edmondson hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

414.    Defendants altered Edmondson's image to create the false appearance, perception and impression that Edmondson worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

415.    Defendants published such altered Edmondson images through online advertisements and through various social media outlets as described herein that were used, operated, owned, controlled, and/or managed by Defendants for advertising and trade purposes, that were designed to promote the Club, attract business to the Club and generate revenue for Defendants and that, upon information and belief, did in fact attract patrons and generate revenue for the Club and Defendants.

416.    At no time did Defendants ever receive permission or consent – whether written or otherwise – to use or alter Edmondson's images, likeness or identity in any way, including but not limited to, online advertisements or social media outlets as described herein.

417.    No applicable privilege or authorization exists for Defendants' use of Edmondson's image, likeness or identity.

418.    Defendants were aware at all relevant times that they never received Edmondson's authority, permission or consent to use or alter her images, likeness or identity in any way, through any media and for any purpose, including for the business purpose of promoting the Club, attracting business and generating revenue for Defendants.

419.    At no time have Defendants ever compensated Edmondson for the unauthorized use or alteration of her image, likeness or identity.

420.    As described herein, Defendants violated Edmondson's right of privacy, violated her right of publicity, misappropriated her image, likeness and identity, and altered and published same without Edmondson's authority or consent.

421.    Defendants' misconduct as described herein violates N.Y. Civil Rights Law §§ 50-51 and was wrongful.

422.    Defendants' misconduct was knowing and willful.

423.    Defendants' misconduct evinces intentional action and/or reckless disregard of Edmondson's rights.

424.    Due to Defendants' violation of Edmondson's rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Edmondson has been damaged in an amount to be determined at trial.

425.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Edmondson further requests an Order permanently enjoining Defendants from further violating Edmondson's rights of privacy and publicity.

426.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Edmondson further requests an award of punitive damages in an amount to be determined at trial but in no case less than twice the amount of actual damages awarded at trial.

## EDMONDSON COUNT III
### (Violation of N.Y. General Business Law § 349:
### N.Y. Deceptive Trade Practices Act as to all Defendants)

427.    Edmondson hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

428.    Defendants used, operated, owned, controlled, and/or managed, among others, www.NYCGENTLEMENCLUB.com, www.HOTTESTNEWYORKSTRIPPERS.com, and www.NYCGENTLEMENSCLUB.com, as well as various social media outlets such as Facebook, Twitter, Instagram and Tumbler, among others, in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

429.    Defendants' use and operation of the foregoing websites and social media accounts was consumer-oriented in nature and directed to a local, national and international clientele.

430.    Defendants published Edmondson's image, likeness and identity on the foregoing websites and social media outlets in order to create the false appearance, perception and impression about Edmondson's affiliation with the Club, or participation in or endorsement of the advertised events and activities at the Club, among other objectives.

431.    In publishing Edmondson's image, likeness and identity as described herein, Defendants intended to mislead the public.

432.    At all times, Defendants knew Edmondson was not affiliated with the Club, knew that Edmondson was not going to participate in any Club events and activities, and knew Edmondson did not endorse Defendants' business, the Club or the Club's events and activities.

433.    Defendants' publication of Edmondson's image, likeness and identity as described herein was done without Edmondson's consent or authorization.

434.    Defendants' unauthorized publication of Edmondson's image, likeness and identity as described herein was misleading in a material respect because it created the false appearance, perception and impression that Edmondson, in fact, was in some way affiliated with the Club, participated in the advertised events and activities, and/or endorsed Defendants' business, the Club or the Club's events and activities.

435.    Defendants' unauthorized and misleading publication of Edmondson's image, likeness and identity on the foregoing websites and social media outlets as described herein have damaged Edmondson's reputation and marketability in an amount to be determined at trial.

### *Brenda Geiger's Causes of Action*

### <u>GEIGER COUNT I</u>
### (Violation of the Lanham Act, 15 U.S.C. § 1125:
### False Endorsement/Unfair Competition as to all Defendants)

436.    Geiger hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

437.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* apply to Defendants and protect Geiger from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a).

438.    Defendants used Geiger's image, likeness and identity as described herein without authority in interstate commerce in order to create the false and misleading impression that Geiger worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, or consented to or authorized Defendants' or the Club's usage of her

images in order to advertise, promote, and market Defendants business, or the Club's events and activities.

439.    Defendants' unauthorized use and alteration of Geiger's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

440.    Defendants' unauthorized use and alteration of Geiger's image, likeness and identity as described herein constitutes a false endorsement and a false association that is likely to confuse consumers, including actual and prospective patrons to the Club, as to whether Geiger worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

441.    Upon information and belief, Defendants' unauthorized use or alteration of Geiger's image, likeness and identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Geiger worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

442.    Defendants knew or should have known that their unauthorized use and alteration of Geiger's image, likeness and identity would cause consumer confusion as described above.

443.    Defendants' unauthorized use and alteration of Geiger's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

444.    Defendants wrongful conduct as described herein was willful.

445.    Defendants unauthorized use of Geiger's image, likeness and identity has damaged Geiger in an amount to be determined at trial.

## GEIGER COUNT II
### (Violation of N.Y. Civ. Rights Law §§ 50-51 as to all Defendants)

446.    Geiger hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

447.    Defendants altered Geiger's image to create the false appearance, perception and impression that Geiger worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

448.    Defendants published such altered Geiger images through online advertisements and through various social media outlets as described herein that were used, operated, owned, controlled, and/or managed by Defendants for advertising and trade purposes, that were designed to promote the Club, attract business to the Club and generate revenue for Defendants and that, upon information and belief, did in fact attract patrons and generate revenue for the Club and Defendants.

449.    At no time did Defendants ever receive permission or consent – whether written or otherwise – to use or alter Geiger's images, likeness or identity in any way, including but not limited to, online advertisements or social media outlets as described herein.

450.    No applicable privilege or authorization exists for Defendants' use of Geiger's image, likeness or identity.

451.    Defendants were aware at all relevant times that they never received Geiger's authority, permission or consent to use or alter her images, likeness or identity in any way,

through any media and for any purpose, including for the business purpose of promoting the Club, attracting business and generating revenue for Defendants.

452.    At no time have Defendants ever compensated Geiger for the unauthorized use or alteration of her image, likeness or identity.

453.    As described herein, Defendants violated Geiger's right of privacy, violated her right of publicity, misappropriated her image, likeness and identity, and altered and published same without Geiger's authority or consent.

454.    Defendants' misconduct as described herein violates N.Y. Civil Rights Law §§ 50-51 and was wrongful.

455.    Defendants' misconduct was knowing and willful.

456.    Defendants' misconduct evinces intentional action and/or reckless disregard of Geiger's rights.

457.    Due to Defendants' violation of Geiger's rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Geiger has been damaged in an amount to be determined at trial.

458.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Geiger further requests an Order permanently enjoining Defendants from further violating Geiger's rights of privacy and publicity.

459.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Geiger further requests an award of punitive damages in an amount to be determined at trial but in no case less than twice the amount of actual damages awarded at trial.

## GEIGER COUNT III
### (Violation of N.Y. General Business Law § 349:
### N.Y. Deceptive Trade Practices Act as to all Defendants)

460.    Geiger hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

461.    Defendants used, operated, owned, controlled, and/or managed, among others, www.NYCGENTLEMENCLUB.com,     www.HOTTESTNEWYORKSTRIPPERS.com,     and www.NYCGENTLEMENSCLUB.com, as well as various social media outlets such as Facebook, Twitter, Instagram and Tumbler, among others, in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

462.    Defendants' use and operation of the foregoing websites and social media accounts was consumer-oriented in nature and directed to a local, national and international clientele.

463.    Defendants published Geiger's image, likeness and identity on the foregoing websites and social media outlets in order to create the false appearance, perception and impression about Geiger's affiliation with the Club, or participation in or endorsement of the advertised events and activities at the Club, among other objectives.

464.    In publishing Geiger's image, likeness and identity as described herein, Defendants intended to mislead the public.

465.    At all times, Defendants knew Geiger was not affiliated with the Club, knew that Geiger was not going to participate in any Club events and activities, and knew Geiger did not endorse Defendants' business, the Club or the Club's events and activities.

466.    Defendants' publication of Geiger's image, likeness and identity as described herein was done without Geiger's consent or authorization.

467.    Defendants' unauthorized publication of Geiger's image, likeness and identity as described herein was misleading in a material respect because it created the false appearance, perception and impression that Geiger, in fact, was in some way affiliated with the Club, participated in the advertised events and activities, and/or endorsed Defendants' business, the Club or the Club's events and activities.

468.    Defendants' unauthorized and misleading publication of Geiger's image, likeness and identity on the foregoing websites and social media outlets as described herein have damaged Geiger's reputation and marketability in an amount to be determined at trial.

### *Cielo Jean (CJ) Gibson's Causes of Action*

### <u>GIBSON COUNT I</u>
### (Violation of the Lanham Act, 15 U.S.C. § 1125:
### False Endorsement/Unfair Competition as to all Defendants)

469.    Gibson hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

470.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* apply to Defendants and protect Gibson from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a).

471.    Defendants used Gibson's image, likeness and identity as described herein without authority in interstate commerce in order to create the false and misleading impression that Gibson worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, or consented to or authorized Defendants' or the Club's usage of

her images in order to advertise, promote, and market Defendants business, or the Club's events and activities.

472.    Defendants' unauthorized use and alteration of Gibson's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

473.    Defendants' unauthorized use and alteration of Gibson's image, likeness and identity as described herein constitutes a false endorsement and a false association that is likely to confuse consumers, including actual and prospective patrons to the Club, as to whether Gibson worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

474.    Upon information and belief, Defendants' unauthorized use or alteration of Gibson's image, likeness and identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Gibson worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

475.    Defendants knew or should have known that their unauthorized use and alteration of Gibson's image, likeness and identity would cause consumer confusion as described above.

476.    Defendants' unauthorized use and alteration of Gibson's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

477.    Defendants wrongful conduct as described herein was willful.

478.    Defendants unauthorized use of Gibson's image, likeness and identity has damaged Gibson in an amount to be determined at trial.

## GIBSON COUNT II
### (Violation of N.Y. Civ. Rights Law §§ 50-51 as to all Defendants)

479.    Gibson hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

480.    Defendants altered Gibson's image to create the false appearance, perception and impression that Gibson worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

481.    Defendants published such altered Gibson images through online advertisements and through various social media outlets as described herein that were used, operated, owned, controlled, and/or managed by Defendants for advertising and trade purposes, that were designed to promote the Club, attract business to the Club and generate revenue for Defendants and that, upon information and belief, did in fact attract patrons and generate revenue for the Club and Defendants.

482.    At no time did Defendants ever receive permission or consent – whether written or otherwise – to use or alter Gibson's images, likeness or identity in any way, including but not limited to, online advertisements or social media outlets as described herein.

483.    No applicable privilege or authorization exists for Defendants' use of Gibson's image, likeness or identity.

484.    Defendants were aware at all relevant times that they never received Gibson's authority, permission or consent to use or alter her images, likeness or identity in any way,

through any media and for any purpose, including for the business purpose of promoting the Club, attracting business and generating revenue for Defendants.

485.    At no time have Defendants ever compensated Gibson for the unauthorized use or alteration of her image, likeness or identity.

486.    As described herein, Defendants violated Gibson's right of privacy, violated her right of publicity, misappropriated her image, likeness and identity, and altered and published same without Gibson's authority or consent.

487.    Defendants' misconduct as described herein violates N.Y. Civil Rights Law §§ 50-51 and was wrongful.

488.    Defendants' misconduct was knowing and willful.

489.    Defendants' misconduct evinces intentional action and/or reckless disregard of Gibson's rights.

490.    Due to Defendants' violation of Gibson's rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Gibson has been damaged in an amount to be determined at trial.

491.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Gibson further requests an Order permanently enjoining Defendants from further violating Gibson's rights of privacy and publicity.

492.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Gibson further requests an award of punitive damages in an amount to be determined at trial but in no case less than twice the amount of actual damages awarded at trial.

**GIBSON COUNT III**
**(Violation of N.Y. General Business Law § 349:**
**N.Y. Deceptive Trade Practices Act as to all Defendants)**

493.    Gibson hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

494.    Defendants used, operated, owned, controlled, and/or managed, among others, www.NYCGENTLEMENCLUB.com, www.HOTTESTNEWYORKSTRIPPERS.com, and www.NYCGENTLEMENSCLUB.com, as well as various social media outlets such as Facebook, Twitter, Instagram and Tumbler, among others, in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

495.    Defendants' use and operation of the foregoing websites and social media accounts was consumer-oriented in nature and directed to a local, national and international clientele.

496.    Defendants published Gibson's image, likeness and identity on the foregoing websites and social media outlets in order to create the false appearance, perception and impression about Gibson's affiliation with the Club, or participation in or endorsement of the advertised events and activities at the Club, among other objectives.

497.    In publishing Gibson's image, likeness and identity as described herein, Defendants intended to mislead the public.

498.    At all times, Defendants knew Gibson was not affiliated with the Club, knew that Gibson was not going to participate in any Club events and activities, and knew Gibson did not endorse Defendants' business, the Club or the Club's events and activities.

499.    Defendants' publication of Gibson's image, likeness and identity as described herein was done without Gibson's consent or authorization.

500.    Defendants' unauthorized publication of Gibson's image, likeness and identity as described herein was misleading in a material respect because it created the false appearance, perception and impression that Gibson, in fact, was in some way affiliated with the Club, participated in the advertised events and activities, and/or endorsed Defendants' business, the Club or the Club's events and activities.

501.    Defendants' unauthorized and misleading publication of Gibson's image, likeness and identity on the foregoing websites and social media outlets as described herein have damaged Gibson's reputation and marketability in an amount to be determined at trial.

### *Vida Guerra's Causes of Action*

### <u>GUERRA COUNT I</u>
### (Violation of the Lanham Act, 15 U.S.C. § 1125:
### False Endorsement/Unfair Competition as to all Defendants)

502.    Guerra hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

503.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* apply to Defendants and protect Guerra from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a).

504.    Defendants used Guerra's image, likeness and identity as described herein without authority in interstate commerce in order to create the false and misleading impression that Guerra worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, or consented to or authorized Defendants' or the Club's usage of her

images in order to advertise, promote, and market Defendants business, or the Club's events and activities.

505.    Defendants' unauthorized use and alteration of Guerra's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

506.    Defendants' unauthorized use and alteration of Guerra's image, likeness and identity as described herein constitutes a false endorsement and a false association that is likely to confuse consumers, including actual and prospective patrons to the Club, as to whether Guerra worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

507.    Upon information and belief, Defendants' unauthorized use or alteration of Guerra's image, likeness and identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Guerra worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

508.    Defendants knew or should have known that their unauthorized use and alteration of Guerra's image, likeness and identity would cause consumer confusion as described above.

509.    Defendants' unauthorized use and alteration of Guerra's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

510.    Defendants wrongful conduct as described herein was willful.

511.    Defendants unauthorized use of Guerra's image, likeness and identity has damaged Guerra in an amount to be determined at trial.

### GUERRA COUNT II
**(Violation of N.Y. Civ. Rights Law §§ 50-51 as to all Defendants)**

512.    Guerra hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

513.    Defendants altered Guerra's image to create the false appearance, perception and impression that Guerra worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

514.    Defendants published such altered Guerra images through online advertisements and through various social media outlets as described herein that were used, operated, owned, controlled, and/or managed by Defendants for advertising and trade purposes, that were designed to promote the Club, attract business to the Club and generate revenue for Defendants and that, upon information and belief, did in fact attract patrons and generate revenue for the Club and Defendants.

515.    At no time did Defendants ever receive permission or consent – whether written or otherwise – to use or alter Guerra's images, likeness or identity in any way, including but not limited to, online advertisements or social media outlets as described herein.

516.    No applicable privilege or authorization exists for Defendants' use of Guerra's image, likeness or identity.

517.    Defendants were aware at all relevant times that they never received Guerra's authority, permission or consent to use or alter her images, likeness or identity in any way,

through any media and for any purpose, including for the business purpose of promoting the Club, attracting business and generating revenue for Defendants.

518.    At no time have Defendants ever compensated Guerra for the unauthorized use or alteration of her image, likeness or identity.

519.    As described herein, Defendants violated Guerra's right of privacy, violated her right of publicity, misappropriated her image, likeness and identity, and altered and published same without Guerra's authority or consent.

520.    Defendants' misconduct as described herein violates N.Y. Civil Rights Law §§ 50-51 and was wrongful.

521.    Defendants' misconduct was knowing and willful.

522.    Defendants' misconduct evinces intentional action and/or reckless disregard of Guerra's rights.

523.    Due to Defendants' violation of Guerra's rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Guerra has been damaged in an amount to be determined at trial.

524.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Guerra further requests an Order permanently enjoining Defendants from further violating Guerra's rights of privacy and publicity.

525.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Guerra further requests an award of punitive damages in an amount to be determined at trial but in no case less than twice the amount of actual damages awarded at trial.

## GUERRA COUNT III
### (Violation of N.Y. General Business Law § 349:
### N.Y. Deceptive Trade Practices Act as to all Defendants)

526.    Guerra hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

527.    Defendants used, operated, owned, controlled, and/or managed, among others, www.NYCGENTLEMENCLUB.com, www.HOTTESTNEWYORKSTRIPPERS.com, and www.NYCGENTLEMENSCLUB.com, as well as various social media outlets such as Facebook, Twitter, Instagram and Tumbler, among others, in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

528.    Defendants' use and operation of the foregoing websites and social media accounts was consumer-oriented in nature and directed to a local, national and international clientele.

529.    Defendants published Guerra's image, likeness and identity on the foregoing websites and social media outlets in order to create the false appearance, perception and impression about Guerra's affiliation with the Club, or participation in or endorsement of the advertised events and activities at the Club, among other objectives.

530.    In publishing Guerra's image, likeness and identity as described herein, Defendants intended to mislead the public.

531.    At all times, Defendants knew Guerra was not affiliated with the Club, knew that Guerra was not going to participate in any Club events and activities, and knew Guerra did not endorse Defendants' business, the Club or the Club's events and activities.

532.    Defendants' publication of Guerra's image, likeness and identity as described herein was done without Guerra's consent or authorization.

533.    Defendants' unauthorized publication of Guerra's image, likeness and identity as described herein was misleading in a material respect because it created the false appearance, perception and impression that Guerra, in fact, was in some way affiliated with the Club, participated in the advertised events and activities, and/or endorsed Defendants' business, the Club or the Club's events and activities.

534.    Defendants' unauthorized and misleading publication of Guerra's image, likeness and identity on the foregoing websites and social media outlets as described herein have damaged Guerra's reputation and marketability in an amount to be determined at trial.

### *Jessica Hinton's Causes of Action*

### <u>HINTON COUNT I</u>
### (Violation of the Lanham Act, 15 U.S.C. § 1125:
### False Endorsement/Unfair Competition as to all Defendants)

535.    Hinton hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

536.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* apply to Defendants and protect Hinton from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a).

537.    Defendants used Hinton's image, likeness and identity as described herein without authority in interstate commerce in order to create the false and misleading impression that Hinton worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, or consented to or authorized Defendants' or the Club's usage of her

images in order to advertise, promote, and market Defendants business, or the Club's events and activities.

538.    Defendants' unauthorized use and alteration of Hinton's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

539.    Defendants' unauthorized use and alteration of Hinton's image, likeness and identity as described herein constitutes a false endorsement and a false association that is likely to confuse consumers, including actual and prospective patrons to the Club, as to whether Hinton worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

540.    Upon information and belief, Defendants' unauthorized use or alteration of Hinton's image, likeness and identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Hinton worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

541.    Defendants knew or should have known that their unauthorized use and alteration of Hinton's image, likeness and identity would cause consumer confusion as described above.

542.    Defendants' unauthorized use and alteration of Hinton's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

543.    Defendants wrongful conduct as described herein was willful.

544.    Defendants unauthorized use of Hinton's image, likeness and identity has damaged Hinton in an amount to be determined at trial.

### HINTON COUNT II
#### (Violation of N.Y. Civ. Rights Law §§ 50-51 as to all Defendants)

545.    Hinton hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

546.    Defendants altered Hinton's image to create the false appearance, perception and impression that Hinton worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

547.    Defendants published such altered Hinton images through online advertisements and through various social media outlets as described herein that were used, operated, owned, controlled, and/or managed by Defendants for advertising and trade purposes, that were designed to promote the Club, attract business to the Club and generate revenue for Defendants and that, upon information and belief, did in fact attract patrons and generate revenue for the Club and Defendants.

548.    At no time did Defendants ever receive permission or consent – whether written or otherwise – to use or alter Hinton's images, likeness or identity in any way, including but not limited to, online advertisements or social media outlets as described herein.

549.    No applicable privilege or authorization exists for Defendants' use of Hinton's image, likeness or identity.

550.    Defendants were aware at all relevant times that they never received Hinton's authority, permission or consent to use or alter her images, likeness or identity in any way,

through any media and for any purpose, including for the business purpose of promoting the Club, attracting business and generating revenue for Defendants.

551. At no time have Defendants ever compensated Hinton for the unauthorized use or alteration of her image, likeness or identity.

552. As described herein, Defendants violated Hinton's right of privacy, violated her right of publicity, misappropriated her image, likeness and identity, and altered and published same without Hinton's authority or consent.

553. Defendants' misconduct as described herein violates N.Y. Civil Rights Law §§ 50-51 and was wrongful.

554. Defendants' misconduct was knowing and willful.

555. Defendants' misconduct evinces intentional action and/or reckless disregard of Hinton's rights.

556. Due to Defendants' violation of Hinton's rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Hinton has been damaged in an amount to be determined at trial.

557. Pursuant to Section 51 of the N.Y. Civil Rights Act, Hinton further requests an Order permanently enjoining Defendants from further violating Hinton's rights of privacy and publicity.

558. Pursuant to Section 51 of the N.Y. Civil Rights Act, Hinton further requests an award of punitive damages in an amount to be determined at trial but in no case less than twice the amount of actual damages awarded at trial.

## HINTON COUNT III
### (Violation of N.Y. General Business Law § 349:
### N.Y. Deceptive Trade Practices Act as to all Defendants)

559.     Hinton hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

560.     Defendants used, operated, owned, controlled, and/or managed, among others, www.NYCGENTLEMENCLUB.com,     www.HOTTESTNEWYORKSTRIPPERS.com,     and www.NYCGENTLEMENSCLUB.com, as well as various social media outlets such as Facebook, Twitter, Instagram and Tumbler, among others, in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

561.     Defendants' use and operation of the foregoing websites and social media accounts was consumer-oriented in nature and directed to a local, national and international clientele.

562.     Defendants published Hinton's image, likeness and identity on the foregoing websites and social media outlets in order to create the false appearance, perception and impression about Hinton's affiliation with the Club, or participation in or endorsement of the advertised events and activities at the Club, among other objectives.

563.     In publishing Hinton's image, likeness and identity as described herein, Defendants intended to mislead the public.

564.     At all times, Defendants knew Hinton was not affiliated with the Club, knew that Hinton was not going to participate in any Club events and activities, and knew Hinton did not endorse Defendants' business, the Club or the Club's events and activities.

565.     Defendants' publication of Hinton's image, likeness and identity as described herein was done without Hinton's consent or authorization.

566.    Defendants' unauthorized publication of Hinton's image, likeness and identity as described herein was misleading in a material respect because it created the false appearance, perception and impression that Hinton, in fact, was in some way affiliated with the Club, participated in the advertised events and activities, and/or endorsed Defendants' business, the Club or the Club's events and activities.

567.    Defendants' unauthorized and misleading publication of Hinton's image, likeness and identity on the foregoing websites and social media outlets as described herein have damaged Hinton's reputation and marketability in an amount to be determined at trial.

### *Rosie Olivia Jones' Causes of Action*

### JONES COUNT I
**(Violation of the Lanham Act, 15 U.S.C. § 1125:
False Endorsement/Unfair Competition as to all Defendants)**

568.    Jones hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

569.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* apply to Defendants and protect Jones from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a).

570.    Defendants used Jones' image, likeness and identity as described herein without authority in interstate commerce in order to create the false and misleading impression that Jones worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, or the Club's events and activities.

571.    Defendants' unauthorized use and alteration of Jones' image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

572.    Defendants' unauthorized use and alteration of Jones' image, likeness and identity as described herein constitutes a false endorsement and a false association that is likely to confuse consumers, including actual and prospective patrons to the Club, as to whether Jones worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

573.    Upon information and belief, Defendants' unauthorized use or alteration of Jones' image, likeness and identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Jones worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

574.    Defendants knew or should have known that their unauthorized use and alteration of Jones' image, likeness and identity would cause consumer confusion as described above.

575.    Defendants' unauthorized use and alteration of Jones' image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

576.    Defendants wrongful conduct as described herein was willful.

577.    Defendants unauthorized use of Jones' image, likeness and identity has damaged Jones in an amount to be determined at trial.

## JONES COUNT II
### (Violation of N.Y. Civ. Rights Law §§ 50-51 as to all Defendants)

578.    Jones hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

579.    Defendants altered Jones' image to create the false appearance, perception and impression that Jones worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

580.    Defendants published such altered Jones images through online advertisements and through various social media outlets as described herein that were used, operated, owned, controlled, and/or managed by Defendants for advertising and trade purposes, that were designed to promote the Club, attract business to the Club and generate revenue for Defendants and that, upon information and belief, did in fact attract patrons and generate revenue for the Club and Defendants.

581.    At no time did Defendants ever receive permission or consent – whether written or otherwise – to use or alter Jones' images, likeness or identity in any way, including but not limited to, online advertisements or social media outlets as described herein.

582.    No applicable privilege or authorization exists for Defendants' use of Jones' image, likeness or identity.

583.    Defendants were aware at all relevant times that they never received Jones' authority, permission or consent to use or alter her images, likeness or identity in any way, through any media and for any purpose, including for the business purpose of promoting the Club, attracting business and generating revenue for Defendants.

584.    At no time have Defendants ever compensated Jones for the unauthorized use or alteration of her image, likeness or identity.

585.    As described herein, Defendants violated Jones' right of privacy, violated her right of publicity, misappropriated her image, likeness and identity, and altered and published same without Jones' authority or consent.

586.    Defendants' misconduct as described herein violates N.Y. Civil Rights Law §§ 50-51 and was wrongful.

587.    Defendants' misconduct was knowing and willful.

588.    Defendants' misconduct evinces intentional action and/or reckless disregard of Jones' rights.

589.    Due to Defendants' violation of Jones' rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Jones has been damaged in an amount to be determined at trial.

590.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Jones further requests an Order permanently enjoining Defendants from further violating Jones' rights of privacy and publicity.

591.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Jones further requests an award of punitive damages in an amount to be determined at trial but in no case less than twice the amount of actual damages awarded at trial.

## JONES COUNT III
### (Violation of N.Y. General Business Law § 349:
### N.Y. Deceptive Trade Practices Act as to all Defendants)

592.    Jones hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

593.    Defendants used, operated, owned, controlled, and/or managed, among others, www.NYCGENTLEMENCLUB.com, www.HOTTESTNEWYORKSTRIPPERS.com, and www.NYCGENTLEMENSCLUB.com, as well as various social media outlets such as Facebook, Twitter, Instagram and Tumbler, among others, in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

594.    Defendants' use and operation of the foregoing websites and social media accounts was consumer-oriented in nature and directed to a local, national and international clientele.

595.    Defendants published Jones' image, likeness and identity on the foregoing websites and social media outlets in order to create the false appearance, perception and impression about Jones' affiliation with the Club, or participation in or endorsement of the advertised events and activities at the Club, among other objectives.

596.    In publishing Jones' image, likeness and identity as described herein, Defendants intended to mislead the public.

597.    At all times, Defendants knew Jones was not affiliated with the Club, knew that Jones was not going to participate in any Club events and activities, and knew Jones did not endorse Defendants' business, the Club or the Club's events and activities.

598.    Defendants' publication of Jones' image, likeness and identity as described herein was done without Jones' consent or authorization.

599.    Defendants' unauthorized publication of Jones' image, likeness and identity as described herein was misleading in a material respect because it created the false appearance, perception and impression that Jones, in fact, was in some way affiliated with the Club,

participated in the advertised events and activities, and/or endorsed Defendants' business, the Club or the Club's events and activities.

600.    Defendants' unauthorized and misleading publication of Jones' image, likeness and identity on the foregoing websites and social media outlets as described herein have damaged Jones' reputation and marketability in an amount to be determined at trial.

### *Jessica (Charm) Killings' Causes of Action*

### KILLINGS COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125:
### False Endorsement/Unfair Competition as to all Defendants)

601.    Killings hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

602.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* apply to Defendants and protect Killings from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a).

603.    Defendants used Killings' image, likeness and identity as described herein without authority in interstate commerce in order to create the false and misleading impression that Killings worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, or the Club's events and activities.

604.    Defendants' unauthorized use and alteration of Killings' image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

605.    Defendants' unauthorized use and alteration of Killings' image, likeness and identity as described herein constitutes a false endorsement and a false association that is likely to confuse consumers, including actual and prospective patrons to the Club, as to whether Killings worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

606.    Upon information and belief, Defendants' unauthorized use or alteration of Killings' image, likeness and identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Killings worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

607.    Defendants knew or should have known that their unauthorized use and alteration of Killings' image, likeness and identity would cause consumer confusion as described above.

608.    Defendants' unauthorized use and alteration of Killings' image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

609.    Defendants wrongful conduct as described herein was willful.

610.    Defendants unauthorized use of Killings' image, likeness and identity has damaged Killings in an amount to be determined at trial.

## KILLINGS COUNT II
### (Violation of N.Y. Civ. Rights Law §§ 50-51 as to all Defendants)

611.    Killings hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

612.    Defendants altered Killings' image to create the false appearance, perception and impression that Killings worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

613.    Defendants published such altered Killings images through online advertisements and through various social media outlets as described herein that were used, operated, owned, controlled, and/or managed by Defendants for advertising and trade purposes, that were designed to promote the Club, attract business to the Club and generate revenue for Defendants and that, upon information and belief, did in fact attract patrons and generate revenue for the Club and Defendants.

614.    At no time did Defendants ever receive permission or consent – whether written or otherwise – to use or alter Killings' images, likeness or identity in any way, including but not limited to, online advertisements or social media outlets as described herein.

615.    No applicable privilege or authorization exists for Defendants' use of Killings' image, likeness or identity.

616.    Defendants were aware at all relevant times that they never received Killings' authority, permission or consent to use or alter her images, likeness or identity in any way, through any media and for any purpose, including for the business purpose of promoting the Club, attracting business and generating revenue for Defendants.

617.    At no time have Defendants ever compensated Killings for the unauthorized use or alteration of her image, likeness or identity.

618.    As described herein, Defendants violated Killings' right of privacy, violated her right of publicity, misappropriated her image, likeness and identity, and altered and published same without Killings' authority or consent.

619.    Defendants' misconduct as described herein violates N.Y. Civil Rights Law §§ 50-51 and was wrongful.

620.    Defendants' misconduct was knowing and willful.

621.    Defendants' misconduct evinces intentional action and/or reckless disregard of Killings' rights.

622.    Due to Defendants' violation of Killings' rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Killings has been damaged in an amount to be determined at trial.

623.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Killings further requests an Order permanently enjoining Defendants from further violating Killings' rights of privacy and publicity.

624.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Killings further requests an award of punitive damages in an amount to be determined at trial but in no case less than twice the amount of actual damages awarded at trial.

### KILLINGS COUNT III
#### (Violation of N.Y. General Business Law § 349:
#### N.Y. Deceptive Trade Practices Act as to all Defendants)

625.    Killings hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

626.    Defendants used, operated, owned, controlled, and/or managed, among others, www.NYCGENTLEMENCLUB.com, www.HOTTESTNEWYORKSTRIPPERS.com, and www.NYCGENTLEMENSCLUB.com, as well as various social media outlets such as Facebook, Twitter, Instagram and Tumbler, among others, in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

627.    Defendants' use and operation of the foregoing websites and social media accounts was consumer-oriented in nature and directed to a local, national and international clientele.

628.    Defendants published Killings' image, likeness and identity on the foregoing websites and social media outlets in order to create the false appearance, perception and impression about Killings' affiliation with the Club, or participation in or endorsement of the advertised events and activities at the Club, among other objectives.

629.    In publishing Killings' image, likeness and identity as described herein, Defendants intended to mislead the public.

630.    At all times, Defendants knew Killings was not affiliated with the Club, knew that Killings was not going to participate in any Club events and activities, and knew Killings did not endorse Defendants' business, the Club or the Club's events and activities.

631.    Defendants' publication of Killings' image, likeness and identity as described herein was done without Killings' consent or authorization.

632.    Defendants' unauthorized publication of Killings' image, likeness and identity as described herein was misleading in a material respect because it created the false appearance, perception and impression that Killings, in fact, was in some way affiliated with the Club,

participated in the advertised events and activities, and/or endorsed Defendants' business, the Club or the Club's events and activities.

633.    Defendants' unauthorized and misleading publication of Killings' image, likeness and identity on the foregoing websites and social media outlets as described herein have damaged Killings' reputation and marketability in an amount to be determined at trial.

*Joanna Krupa's Causes of Action*

**KRUPA COUNT I**
**(Violation of the Lanham Act, 15 U.S.C. § 1125:**
**False Endorsement/Unfair Competition as to all Defendants)**

634.    Krupa hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

635.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* apply to Defendants and protect Krupa from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a).

636.    Defendants used Krupa's image, likeness and identity as described herein without authority in interstate commerce in order to create the false and misleading impression that Krupa worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, or the Club's events and activities.

637.    Defendants' unauthorized use and alteration of Krupa's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

638.    Defendants' unauthorized use and alteration of Krupa's image, likeness and identity as described herein constitutes a false endorsement and a false association that is likely to confuse consumers, including actual and prospective patrons to the Club, as to whether Krupa worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

639.    Upon information and belief, Defendants' unauthorized use or alteration of Krupa's image, likeness and identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Krupa worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

640.    Defendants knew or should have known that their unauthorized use and alteration of Krupa's image, likeness and identity would cause consumer confusion as described above.

641.    Defendants' unauthorized use and alteration of Krupa's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

642.    Defendants wrongful conduct as described herein was willful.

643.    Defendants unauthorized use of Krupa's image, likeness and identity has damaged Krupa in an amount to be determined at trial.

## KRUPA COUNT II
### (Violation of N.Y. Civ. Rights Law §§ 50-51 as to all Defendants)

644.    Krupa hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

645.    Defendants altered Krupa's image to create the false appearance, perception and impression that Krupa worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

646.    Defendants published such altered Krupa images through online advertisements and through various social media outlets as described herein that were used, operated, owned, controlled, and/or managed by Defendants for advertising and trade purposes, that were designed to promote the Club, attract business to the Club and generate revenue for Defendants and that, upon information and belief, did in fact attract patrons and generate revenue for the Club and Defendants.

647.    At no time did Defendants ever receive permission or consent – whether written or otherwise – to use or alter Krupa's images, likeness or identity in any way, including but not limited to, online advertisements or social media outlets as described herein.

648.    No applicable privilege or authorization exists for Defendants' use of Krupa's image, likeness or identity.

649.    Defendants were aware at all relevant times that they never received Krupa's authority, permission or consent to use or alter her images, likeness or identity in any way, through any media and for any purpose, including for the business purpose of promoting the Club, attracting business and generating revenue for Defendants.

650.    At no time have Defendants ever compensated Krupa for the unauthorized use or alteration of her image, likeness or identity.

651.    As described herein, Defendants violated Krupa's right of privacy, violated her right of publicity, misappropriated her image, likeness and identity, and altered and published same without Krupa's authority or consent.

652.    Defendants' misconduct as described herein violates N.Y. Civil Rights Law §§ 50-51 and was wrongful.

653.    Defendants' misconduct was knowing and willful.

654.    Defendants' misconduct evinces intentional action and/or reckless disregard of Krupa's rights.

655.    Due to Defendants' violation of Krupa's rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Krupa has been damaged in an amount to be determined at trial.

656.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Krupa further requests an Order permanently enjoining Defendants from further violating Krupa's rights of privacy and publicity.

657.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Krupa further requests an award of punitive damages in an amount to be determined at trial but in no case less than twice the amount of actual damages awarded at trial.

## KRUPA COUNT III
### (Violation of N.Y. General Business Law § 349:
### N.Y. Deceptive Trade Practices Act as to all Defendants)

658.    Krupa hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

659.    Defendants used, operated, owned, controlled, and/or managed, among others, www.NYCGENTLEMENCLUB.com, www.HOTTESTNEWYORKSTRIPPERS.com, and www.NYCGENTLEMENSCLUB.com, as well as various social media outlets such as Facebook, Twitter, Instagram and Tumbler, among others, in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

660.    Defendants' use and operation of the foregoing websites and social media accounts was consumer-oriented in nature and directed to a local, national and international clientele.

661.    Defendants published Krupa's image, likeness and identity on the foregoing websites and social media outlets in order to create the false appearance, perception and impression about Krupa's affiliation with the Club, or participation in or endorsement of the advertised events and activities at the Club, among other objectives.

662.    In publishing Krupa's image, likeness and identity as described herein, Defendants intended to mislead the public.

663.    At all times, Defendants knew Krupa was not affiliated with the Club, knew Krupa was not going to participate in any Club events and activities, and knew Krupa did not endorse Defendants' business, the Club or the Club's events and activities.

664.    Defendants' publication of Krupa's image, likeness and identity as described herein was done without Krupa's consent or authorization.

665.    Defendants' unauthorized publication of Krupa's image, likeness and identity as described herein was misleading in a material respect because it created the false appearance, perception and impression that Krupa, in fact, was in some way affiliated with the Club,

participated in the advertised events and activities, and/or endorsed Defendants' business, the Club or the Club's events and activities.

666.    Defendants' unauthorized and misleading publication of Krupa's image, likeness and identity on the foregoing websites and social media outlets as described herein have damaged Krupa's reputation and marketability in an amount to be determined at trial.

### *Dessie Mitcheson's Causes of Action*

### MITCHESON COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125:
### False Endorsement/Unfair Competition as to all Defendants)

667.    Mitcheson hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

668.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* apply to Defendants and protect Mitcheson from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a).

669.    Defendants used Mitcheson's image, likeness and identity as described herein without authority in interstate commerce in order to create the false and misleading impression that Mitcheson worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, or the Club's events and activities.

670.    Defendants' unauthorized use and alteration of Mitcheson's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

671.    Defendants' unauthorized use and alteration of Mitcheson's image, likeness and identity as described herein constitutes a false endorsement and a false association that is likely to confuse consumers, including actual and prospective patrons to the Club, as to whether Mitcheson worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

672.    Upon information and belief, Defendants' unauthorized use or alteration of Mitcheson's image, likeness and identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Mitcheson worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

673.    Defendants knew or should have known that their unauthorized use and alteration of Mitcheson's image, likeness and identity would cause consumer confusion as described above.

674.    Defendants' unauthorized use and alteration of Mitcheson's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

675.    Defendants wrongful conduct as described herein was willful.

676.    Defendants unauthorized use of Mitcheson's image, likeness and identity has damaged Mitcheson in an amount to be determined at trial.

## MITCHESON COUNT II
### (Violation of N.Y. Civ. Rights Law §§ 50-51 as to all Defendants)

677.    Mitcheson hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

678.    Defendants altered Mitcheson's image to create the false appearance, perception and impression that Mitcheson worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

679.    Defendants published such altered Mitcheson images through online advertisements and through various social media outlets as described herein that were used, operated, owned, controlled, and/or managed by Defendants for advertising and trade purposes, that were designed to promote the Club, attract business to the Club and generate revenue for Defendants and that, upon information and belief, did in fact attract patrons and generate revenue for the Club and Defendants.

680.    At no time did Defendants ever receive permission or consent – whether written or otherwise – to use or alter Mitcheson's images, likeness or identity in any way, including but not limited to, online advertisements or social media outlets as described herein.

681.    No applicable privilege or authorization exists for Defendants' use of Mitcheson's image, likeness or identity.

682.    Defendants were aware at all relevant times that they never received Mitcheson's authority, permission or consent to use or alter her images, likeness or identity in any way, through any media and for any purpose, including for the business purpose of promoting the Club, attracting business and generating revenue for Defendants.

683.    At no time have Defendants ever compensated Mitcheson for the unauthorized use or alteration of her image, likeness or identity.

684.    As described herein, Defendants violated Mitcheson's right of privacy, violated her right of publicity, misappropriated her image, likeness and identity, and altered and published same without Mitcheson's authority or consent.

685.    Defendants' misconduct as described herein violates N.Y. Civil Rights Law §§ 50-51 and was wrongful.

686.    Defendants' misconduct was knowing and willful.

687.    Defendants' misconduct evinces intentional action and/or reckless disregard of Mitcheson's rights.

688.    Due to Defendants' violation of Mitcheson's rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Mitcheson has been damaged in an amount to be determined at trial.

689.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Mitcheson further requests an Order permanently enjoining Defendants from further violating Mitcheson's rights of privacy and publicity.

690.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Mitcheson further requests an award of punitive damages in an amount to be determined at trial but in no case less than twice the amount of actual damages awarded at trial.

## MITCHESON COUNT III
### (Violation of N.Y. General Business Law § 349:
### N.Y. Deceptive Trade Practices Act as to all Defendants)

691.    Mitcheson hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

692.   Defendants used, operated, owned, controlled, and/or managed, among others, www.NYCGENTLEMENCLUB.com, www.HOTTESTNEWYORKSTRIPPERS.com, and www.NYCGENTLEMENSCLUB.com, as well as various social media outlets such as Facebook, Twitter, Instagram and Tumbler, among others, in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

693.   Defendants' use and operation of the foregoing websites and social media accounts was consumer-oriented in nature and directed to a local, national and international clientele.

694.   Defendants published Mitcheson's image, likeness and identity on the foregoing websites and social media outlets in order to create the false appearance, perception and impression about Mitcheson's affiliation with the Club, or participation in or endorsement of the advertised events and activities at the Club, among other objectives.

695.   In publishing Mitcheson's image, likeness and identity as described herein, Defendants intended to mislead the public.

696.   At all times, Defendants knew Mitcheson was not affiliated with the Club, knew that Mitcheson was not going to participate in any Club events and activities, and knew Mitcheson did not endorse Defendants' business, the Club or the Club's events and activities.

697.   Defendants' publication of Mitcheson's image, likeness and identity as described herein was done without Mitcheson's consent or authorization.

698.   Defendants' unauthorized publication of Mitcheson's image, likeness and identity as described herein was misleading in a material respect because it created the false appearance, perception and impression that Mitcheson, in fact, was in some way affiliated with the Club,

participated in the advertised events and activities, and/or endorsed Defendants' business, the Club or the Club's events and activities.

699. Defendants' unauthorized and misleading publication of Mitcheson's image, likeness and identity on the foregoing websites and social media outlets as described herein have damaged Mitcheson's reputation and marketability in an amount to be determined at trial.

### *Carissa Rosario's Causes of Action*

### ROSARIO COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125:
### False Endorsement/Unfair Competition as to all Defendants)

700. Rosario hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

701. Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* apply to Defendants and protect Rosario from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a).

702. Defendants used Rosario's image, likeness and identity as described herein without authority in interstate commerce in order to create the false and misleading impression that Rosario worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, or the Club's events and activities.

703.    Defendants' unauthorized use and alteration of Rosario's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

704.    Defendants' unauthorized use and alteration of Rosario's image, likeness and identity as described herein constitutes a false endorsement and a false association that is likely to confuse consumers, including actual and prospective patrons to the Club, as to whether Rosario worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

705.    Upon information and belief, Defendants' unauthorized use or alteration of Rosario's image, likeness and identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Rosario worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

706.    Defendants knew or should have known that their unauthorized use and alteration of Rosario's image, likeness and identity would cause consumer confusion as described above.

707.    Defendants' unauthorized use and alteration of Rosario's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

708.    Defendants wrongful conduct as described herein was willful.

709.    Defendants unauthorized use of Rosario's image, likeness and identity has damaged Rosario in an amount to be determined at trial..

## ROSARIO COUNT II
### (Violation of N.Y. Civ. Rights Law §§ 50-51 as to all Defendants)

710.    Rosario hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

711.    Defendants altered Rosario's image to create the false appearance, perception and impression that Rosario worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

712.    Defendants published such altered Rosario images through online advertisements and through various social media outlets as described herein that were used, operated, owned, controlled, and/or managed by Defendants for advertising and trade purposes, that were designed to promote the Club, attract business to the Club and generate revenue for Defendants and that, upon information and belief, did in fact attract patrons and generate revenue for the Club and Defendants.

713.    At no time did Defendants ever receive permission or consent – whether written or otherwise – to use or alter Rosario's images, likeness or identity in any way, including but not limited to, online advertisements or social media outlets as described herein.

714.    No applicable privilege or authorization exists for Defendants' use of Rosario's image, likeness or identity.

715.    Defendants were aware at all relevant times that they never received Rosario's authority, permission or consent to use or alter her images, likeness or identity in any way, through any media and for any purpose, including for the business purpose of promoting the Club, attracting business and generating revenue for Defendants.

716.    At no time have Defendants ever compensated Rosario for the unauthorized use or alteration of her image, likeness or identity.

717.    As described herein, Defendants violated Rosario's right of privacy, violated her right of publicity, misappropriated her image, likeness and identity, and altered and published same without Rosario's authority or consent.

718.    Defendants' misconduct as described herein violates N.Y. Civil Rights Law §§ 50-51 and was wrongful.

719.    Defendants' misconduct was knowing and willful.

720.    Defendants' misconduct evinces intentional action and/or reckless disregard of Rosario's rights.

721.    Due to Defendants' violation of Rosario's rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Rosario has been damaged in an amount to be determined at trial.

722.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Rosario further requests an Order permanently enjoining Defendants from further violating Rosario's rights of privacy and publicity.

723.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Rosario further requests an award of punitive damages in an amount to be determined at trial but in no case less than twice the amount of actual damages awarded at trial.

## ROSARIO COUNT III
### (Violation of N.Y. General Business Law § 349:
### N.Y. Deceptive Trade Practices Act as to all Defendants)

724.    Rosario hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

725.    Defendants used, operated, owned, controlled, and/or managed, among others, www.NYCGENTLEMENCLUB.com,    www.HOTTESTNEWYORKSTRIPPERS.com,    and www.NYCGENTLEMENSCLUB.com, as well as various social media outlets such as Facebook, Twitter, Instagram and Tumbler, among others, in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

726.    Defendants' use and operation of the foregoing websites and social media accounts was consumer-oriented in nature and directed to a local, national and international clientele.

727.    Defendants published Rosario's image, likeness and identity on the foregoing websites and social media outlets in order to create the false appearance, perception and impression about Rosario's affiliation with the Club, or participation in or endorsement of the advertised events and activities at the Club, among other objectives.

728.    In publishing Rosario's image, likeness and identity as described herein, Defendants intended to mislead the public.

729.    At all times, Defendants knew Rosario was not affiliated with the Club, knew that Rosario was not going to participate in any Club events and activities, and knew Rosario did not endorse Defendants' business, the Club or the Club's events and activities.

730.    Defendants' publication of Rosario's image, likeness and identity as described herein was done without Rosario's consent or authorization.

731.    Defendants' unauthorized publication of Rosario's image, likeness and identity as described herein was misleading in a material respect because it created the false appearance, perception and impression that Rosario, in fact, was in some way affiliated with the Club,

participated in the advertised events and activities, and/or endorsed Defendants' business, the Club or the Club's events and activities.

732.    Defendants' unauthorized and misleading publication of Rosario's image, likeness and identity on the foregoing websites and social media outlets as described herein have damaged Rosario's reputation and marketability in an amount to be determined at trial.

### *Gabby Jean Saucedo's Causes of Action*

### SAUCEDO COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125:
### False Endorsement/Unfair Competition as to all Defendants)

733.    Saucedo hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

734.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* apply to Defendants and protect Saucedo from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a).

735.    Defendants used Saucedo's image, likeness and identity as described herein without authority in interstate commerce in order to create the false and misleading impression that Saucedo worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, or the Club's events and activities.

736.    Defendants' unauthorized use and alteration of Saucedo's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

737.    Defendants' unauthorized use and alteration of Saucedo's image, likeness and identity as described herein constitutes a false endorsement and a false association that is likely to confuse consumers, including actual and prospective patrons to the Club, as to whether Saucedo worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

738.    Upon information and belief, Defendants' unauthorized use or alteration of Saucedo's image, likeness and identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Saucedo worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

739.    Defendants knew or should have known that their unauthorized use and alteration of Saucedo's image, likeness and identity would cause consumer confusion as described above.

740.    Defendants' unauthorized use and alteration of Saucedo's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

741.    Defendants wrongful conduct as described herein was willful.

742.    Defendants unauthorized use of Saucedo's image, likeness and identity has damaged Saucedo in an amount to be determined at trial.

### SAUCEDO COUNT II
**(Violation of N.Y. Civ. Rights Law §§ 50-51 as to all Defendants)**

743.    Saucedo hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

744.    Defendants altered Saucedo's image to create the false appearance, perception and impression that Saucedo worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

745.    Defendants published such altered Saucedo images through online advertisements and through various social media outlets as described herein that were used, operated, owned, controlled, and/or managed by Defendants for advertising and trade purposes, that were designed to promote the Club, attract business to the Club and generate revenue for Defendants and that, upon information and belief, did in fact attract patrons and generate revenue for the Club and Defendants.

746.    At no time did Defendants ever receive permission or consent – whether written or otherwise – to use or alter Saucedo's images, likeness or identity in any way, including but not limited to, online advertisements or social media outlets as described herein.

747.    No applicable privilege or authorization exists for Defendants' use of Saucedo's image, likeness or identity.

748.    Defendants were aware at all relevant times that they never received Saucedo's authority, permission or consent to use or alter her images, likeness or identity in any way, through any media and for any purpose, including for the business purpose of promoting the Club, attracting business and generating revenue for Defendants.

749.    At no time have Defendants ever compensated Saucedo for the unauthorized use or alteration of her image, likeness or identity.

750.    As described herein, Defendants violated Saucedo's right of privacy, violated her right of publicity, misappropriated her image, likeness and identity, and altered and published same without Saucedo's authority or consent.

751.    Defendants' misconduct as described herein violates N.Y. Civil Rights Law §§ 50-51 and was wrongful.

752.    Defendants' misconduct was knowing and willful.

753.    Defendants' misconduct evinces intentional action and/or reckless disregard of Saucedo's rights.

754.    Due to Defendants' violation of Saucedo's rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Saucedo has been damaged in an amount to be determined at trial.

755.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Saucedo further requests an Order permanently enjoining Defendants from further violating Saucedo's rights of privacy and publicity.

756.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Saucedo further requests an award of punitive damages in an amount to be determined at trial but in no case less than twice the amount of actual damages awarded at trial.

## SAUCEDO COUNT III
### (Violation of N.Y. General Business Law § 349:
### N.Y. Deceptive Trade Practices Act as to all Defendants)

757.    Saucedo hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

758.    Defendants used, operated, owned, controlled, and/or managed, among others, www.NYCGENTLEMENCLUB.com, www.HOTTESTNEWYORKSTRIPPERS.com, and www.NYCGENTLEMENSCLUB.com, as well as various social media outlets such as Facebook, Twitter, Instagram and Tumbler, among others, in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

759.    Defendants' use and operation of the foregoing websites and social media accounts was consumer-oriented in nature and directed to a local, national and international clientele.

760.    Defendants published Saucedo's image, likeness and identity on the foregoing websites and social media outlets in order to create the false appearance, perception and impression about Saucedo's affiliation with the Club, or participation in or endorsement of the advertised events and activities at the Club, among other objectives.

761.    In publishing Saucedo's image, likeness and identity as described herein, Defendants intended to mislead the public.

762.    At all times, Defendants knew Saucedo was not affiliated with the Club, knew that Saucedo was not going to participate in any Club events and activities, and knew Saucedo did not endorse Defendants' business, the Club or the Club's events and activities.

763.    Defendants' publication of Saucedo's image, likeness and identity as described herein was done without Saucedo's consent or authorization.

764.    Defendants' unauthorized publication of Saucedo's image, likeness and identity as described herein was misleading in a material respect because it created the false appearance, perception and impression that Saucedo, in fact, was in some way affiliated with the Club,

participated in the advertised events and activities, and/or endorsed Defendants' business, the Club or the Club's events and activities.

765.    Defendants' unauthorized and misleading publication of Saucedo's image, likeness and identity on the foregoing websites and social media outlets as described herein have damaged Saucedo's reputation and marketability in an amount to be determined at trial.

### *Tiffany Toth's Causes of Action*

### TOTH COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125:
### False Endorsement/Unfair Competition as to all Defendants)

766.    Toth hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

767.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* apply to Defendants and protect Toth from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a).

768.    Defendants used Toth's image, likeness and identity as described herein without authority in interstate commerce in order to create the false and misleading impression that Toth worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, or the Club's events and activities.

769.    Defendants' unauthorized use and alteration of Toth's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

770.    Defendants' unauthorized use and alteration of Toth's image, likeness and identity as described herein constitutes a false endorsement and a false association that is likely to confuse consumers, including actual and prospective patrons to the Club, as to whether Toth worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

771.    Upon information and belief, Defendants' unauthorized use or alteration of Toth's image, likeness and identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Toth worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

772.    Defendants knew or should have known that their unauthorized use and alteration of Toth's image, likeness and identity would cause consumer confusion as described above.

773.    Defendants' unauthorized use and alteration of Toth's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

774.    Defendants wrongful conduct as described herein was willful.

775.    Defendants unauthorized use of Toth's image, likeness and identity has damaged Toth in an amount to be determined at trial.

## TOTH COUNT II
### (Violation of N.Y. Civ. Rights Law §§ 50-51 as to all Defendants)

776.    Toth hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

777.    Defendants altered Toth's image to create the false appearance, perception and impression that Toth worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

778.    Defendants published such altered Toth images through online advertisements and through various social media outlets as described herein that were used, operated, owned, controlled, and/or managed by Defendants for advertising and trade purposes, that were designed to promote the Club, attract business to the Club and generate revenue for Defendants and that, upon information and belief, did in fact attract patrons and generate revenue for the Club and Defendants.

779.    At no time did Defendants ever receive permission or consent – whether written or otherwise – to use or alter Toth's images, likeness or identity in any way, including but not limited to, online advertisements or social media outlets as described herein.

780.    No applicable privilege or authorization exists for Defendants' use of Toth's image, likeness or identity.

781.    Defendants were aware at all relevant times that they never received Toth's authority, permission or consent to use or alter her images, likeness or identity in any way, through any media and for any purpose, including for the business purpose of promoting the Club, attracting business and generating revenue for Defendants.

782.    At no time have Defendants ever compensated Toth for the unauthorized use or alteration of her image, likeness or identity.

783.    As described herein, Defendants violated Toth's right of privacy, violated her right of publicity, misappropriated her image, likeness and identity, and altered and published same without Toth's authority or consent.

784.    Defendants' misconduct as described herein violates N.Y. Civil Rights Law §§ 50-51 and was wrongful.

785.    Defendants' misconduct was knowing and willful.

786.    Defendants' misconduct evinces intentional action and/or reckless disregard of Toth's rights.

787.    Due to Defendants' violation of Toth's rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Toth has been damaged in an amount to be determined at trial.

788.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Toth further requests an Order permanently enjoining Defendants from further violating Toth's rights of privacy and publicity.

789.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Toth further requests an award of punitive damages in an amount to be determined at trial but in no case less than twice the amount of actual damages awarded at trial

### TOTH COUNT III
**(Violation of N.Y. General Business Law § 349:**
**N.Y. Deceptive Trade Practices Act as to all Defendants)**

790.    Toth hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

791.    Defendants used, operated, owned, controlled, and/or managed, among others, www.NYCGENTLEMENCLUB.com,    www.HOTTESTNEWYORKSTRIPPERS.com,    and

www.NYCGENTLEMENSCLUB.com, as well as various social media outlets such as Facebook, Twitter, Instagram and Tumbler, among others, in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

792.    Defendants' use and operation of the foregoing websites and social media accounts was consumer-oriented in nature and directed to a local, national and international clientele.

793.    Defendants published Toth's image, likeness and identity on the foregoing websites and social media outlets in order to create the false appearance, perception and impression about Toth's affiliation with the Club, or participation in or endorsement of the advertised events and activities at the Club, among other objectives.

794.    In publishing Toth's image, likeness and identity as described herein, Defendants intended to mislead the public.

795.    At all times, Defendants knew Toth was not affiliated with the Club, knew that Toth was not going to participate in any Club events and activities, and knew Toth did not endorse Defendants' business, the Club or the Club's events and activities.

796.    Defendants' publication of Toth's image, likeness and identity as described herein was done without Toth's consent or authorization.

797.    Defendants' unauthorized publication of Toth's image, likeness and identity as described herein was misleading in a material respect because it created the false appearance, perception and impression that Toth, in fact, was in some way affiliated with the Club, participated in the advertised events and activities, and/or endorsed Defendants' business, the Club or the Club's events and activities.

798.    Defendants' unauthorized and misleading publication of Toth's image, likeness and identity on the foregoing websites and social media outlets as described herein have damaged Toth's reputation and marketability in an amount to be determined at trial.

### *Sara Underwood's Causes of Action*

### UNDERWOOD COUNT I
#### (Violation of the Lanham Act, 15 U.S.C. § 1125: False Endorsement/Unfair Competition as to all Defendants)

799.    Underwood hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

800.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* apply to Defendants and protect Underwood from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a).

801.    Defendants used Underwood's image, likeness and identity as described herein without authority in interstate commerce in order to create the false and misleading impression that Underwood worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, or the Club's events and activities.

802.    Defendants' unauthorized use and alteration of Underwood's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

803.    Defendants' unauthorized use and alteration of Underwood's image, likeness and identity as described herein constitutes a false endorsement and a false association that is likely to confuse consumers, including actual and prospective patrons to the Club, as to whether Underwood worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

804.    Upon information and belief, Defendants' unauthorized use or alteration of Underwood's image, likeness and identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Underwood worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

805.    Defendants knew or should have known that their unauthorized use and alteration of Underwood's image, likeness and identity would cause consumer confusion as described above.

806.    Defendants' unauthorized use and alteration of Underwood's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

807.    Defendants wrongful conduct as described herein was willful.

808.    Defendants unauthorized use of Underwood's image, likeness and identity has damaged Underwood in an amount to be determined at trial.

## UNDERWOOD COUNT II
### (Violation of N.Y. Civ. Rights Law §§ 50-51 as to all Defendants)

809.    Underwood hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

810.    Defendants altered Underwood's image to create the false appearance, perception and impression that Underwood worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

811.    Defendants published such altered Underwood images through online advertisements and through various social media outlets as described herein that were used, operated, owned, controlled, and/or managed by Defendants for advertising and trade purposes, that were designed to promote the Club, attract business to the Club and generate revenue for Defendants and that, upon information and belief, did in fact attract patrons and generate revenue for the Club and Defendants.

812.    At no time did Defendants ever receive permission or consent – whether written or otherwise – to use or alter Underwood's images, likeness or identity in any way, including but not limited to, online advertisements or social media outlets as described herein.

813.    No applicable privilege or authorization exists for Defendants' use of Underwood's image, likeness or identity.

814.    Defendants were aware at all relevant times that they never received Underwood's authority, permission or consent to use or alter her images, likeness or identity in any way, through any media and for any purpose, including for the business purpose of promoting the Club, attracting business and generating revenue for Defendants.

815.    At no time have Defendants ever compensated Underwood for the unauthorized use or alteration of her image, likeness or identity.

816.    As described herein, Defendants violated Underwood's right of privacy, violated her right of publicity, misappropriated her image, likeness and identity, and altered and published same without Underwood's authority or consent.

817.    Defendants' misconduct as described herein violates N.Y. Civil Rights Law §§ 50-51 and was wrongful.

818.    Defendants' misconduct was knowing and willful.

819.    Defendants' misconduct evinces intentional action and/or reckless disregard of Underwood's rights.

820.    Due to Defendants' violation of Underwood's rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Underwood has been damaged in an amount to be determined at trial.

821.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Underwood further requests an Order permanently enjoining Defendants from further violating Underwood's rights of privacy and publicity.

822.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Underwood further requests an award of punitive damages in an amount to be determined at trial but in no case less than twice the amount of actual damages awarded at trial.

### UNDERWOOD COUNT III
#### (Violation of N.Y. General Business Law § 349:
#### N.Y. Deceptive Trade Practices Act as to all Defendants)

823.    Underwood hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

824.    Defendants used, operated, owned, controlled, and/or managed, among others, www.NYCGENTLEMENCLUB.com,    www.HOTTESTNEWYORKSTRIPPERS.com,    and www.NYCGENTLEMENSCLUB.com, as well as various social media outlets such as Facebook, Twitter, Instagram and Tumbler, among others, in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

825.    Defendants' use and operation of the foregoing websites and social media accounts was consumer-oriented in nature and directed to a local, national and international clientele.

826.    Defendants published Underwood's image, likeness and identity on the foregoing websites and social media outlets in order to create the false appearance, perception and impression about Underwood's affiliation with the Club, or participation in or endorsement of the advertised events and activities at the Club, among other objectives.

827.    In publishing Underwood's image, likeness and identity as described herein, Defendants intended to mislead the public.

828.    At all times, Defendants knew Underwood was not affiliated with the Club, knew that Underwood was not going to participate in any Club events and activities, and knew Underwood did not endorse Defendants' business, the Club or the Club's events and activities.

829.    Defendants' publication of Underwood's image, likeness and identity as described herein was done without Underwood's consent or authorization.

830.    Defendants' unauthorized publication of Underwood's image, likeness and identity as described herein was misleading in a material respect because it created the false appearance, perception and impression that Underwood, in fact, was in some way affiliated with the Club,

participated in the advertised events and activities, and/or endorsed Defendants' business, the Club or the Club's events and activities.

831.    Defendants' unauthorized and misleading publication of Underwood's image, likeness and identity on the foregoing websites and social media outlets as described herein have damaged Underwood's reputation and marketability in an amount to be determined at trial.

### *Sandra Valencia's Causes of Action*

### VALENCIA COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125: False Endorsement/Unfair Competition as to all Defendants)

832.    Valencia hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

833.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* apply to Defendants and protect Valencia from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a).

834.    Defendants used Valencia's image, likeness and identity as described herein without authority in interstate commerce in order to create the false and misleading impression that Valencia worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, or the Club's events and activities.

835.    Defendants' unauthorized use and alteration of Valencia's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

836.    Defendants' unauthorized use and alteration of Valencia's image, likeness and identity as described herein constitutes a false endorsement and a false association that is likely to confuse consumers, including actual and prospective patrons to the Club, as to whether Valencia worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

837.    Upon information and belief, Defendants' unauthorized use or alteration of Valencia's image, likeness and identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Valencia worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

838.    Defendants knew or should have known that their unauthorized use and alteration of Valencia's image, likeness and identity would cause consumer confusion as described above.

839.    Defendants' unauthorized use and alteration of Valencia's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

840.    Defendants wrongful conduct as described herein was willful.

841.    Defendants unauthorized use of Valencia's image, likeness and identity has damaged Valencia in an amount to be determined at trial.

## VALENCIA COUNT II
### (Violation of N.Y. Civ. Rights Law §§ 50-51 as to all Defendants)

842.    Valencia hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

843.    Defendants altered Valencia's image to create the false appearance, perception and impression that Valencia worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

844.    Defendants published such altered Valencia images through online advertisements and through various social media outlets as described herein that were used, operated, owned, controlled, and/or managed by Defendants for advertising and trade purposes, that were designed to promote the Club, attract business to the Club and generate revenue for Defendants and that, upon information and belief, did in fact attract patrons and generate revenue for the Club and Defendants.

845.    At no time did Defendants ever receive permission or consent – whether written or otherwise – to use or alter Valencia's images, likeness or identity in any way, including but not limited to, online advertisements or social media outlets as described herein.

846.    No applicable privilege or authorization exists for Defendants' use of Valencia's image, likeness or identity.

847.    Defendants were aware at all relevant times that they never received Valencia's authority, permission or consent to use or alter her images, likeness or identity in any way, through any media and for any purpose, including for the business purpose of promoting the Club, attracting business and generating revenue for Defendants.

848.    At no time have Defendants ever compensated Valencia for the unauthorized use or alteration of her image, likeness or identity.

849.    As described herein, Defendants violated Valencia's right of privacy, violated her right of publicity, misappropriated her image, likeness and identity, and altered and published same without Valencia's authority or consent.

850.    Defendants' misconduct as described herein violates N.Y. Civil Rights Law §§ 50-51 and was wrongful.

851.    Defendants' misconduct was knowing and willful.

852.    Defendants' misconduct evinces intentional action and/or reckless disregard of Valencia's rights.

853.    Due to Defendants' violation of Valencia's rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Valencia has been damaged in an amount to be determined at trial.

854.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Valencia further requests an Order permanently enjoining Defendants from further violating Valencia's rights of privacy and publicity.

855.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Valencia further requests an award of punitive damages in an amount to be determined at trial but in no case less than twice the amount of actual damages awarded at trial.

### VALENCIA COUNT III
### (Violation of N.Y. General Business Law § 349:
### N.Y. Deceptive Trade Practices Act as to all Defendants)

856.    Valencia hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

857.    Defendants used, operated, owned, controlled, and/or managed, among others, www.NYCGENTLEMENCLUB.com, www.HOTTESTNEWYORKSTRIPPERS.com, and www.NYCGENTLEMENSCLUB.com, as well as various social media outlets such as Facebook, Twitter, Instagram and Tumbler, among others, in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

858.    Defendants' use and operation of the foregoing websites and social media accounts was consumer-oriented in nature and directed to a local, national and international clientele.

859.    Defendants published Valencia's image, likeness and identity on the foregoing websites and social media outlets in order to create the false appearance, perception and impression about Valencia's affiliation with the Club, or participation in or endorsement of the advertised events and activities at the Club, among other objectives.

860.    In publishing Valencia's image, likeness and identity as described herein, Defendants intended to mislead the public.

861.    At all times, Defendants knew Valencia was not affiliated with the Club, knew that Valencia was not going to participate in any Club events and activities, and knew Valencia did not endorse Defendants' business, the Club or the Club's events and activities.

862.    Defendants' publication of Valencia's image, likeness and identity as described herein was done without Valencia's consent or authorization.

863.    Defendants' unauthorized publication of Valencia's image, likeness and identity as described herein was misleading in a material respect because it created the false appearance, perception and impression that Valencia, in fact, was in some way affiliated with the Club,

participated in the advertised events and activities, and/or endorsed Defendants' business, the Club or the Club's events and activities.

864.    Defendants' unauthorized and misleading publication of Valencia's image, likeness and identity on the foregoing websites and social media outlets as described herein have damaged Valencia's reputation and marketability in an amount to be determined at trial.

*Irina Voronina's Causes of Action*

<u>VORONINA COUNT I</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125:**
**False Endorsement/Unfair Competition as to all Defendants)**

865.    Voronina hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

866.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* apply to Defendants and protect Voronina from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a).

867.    Defendants used Voronina's image, likeness and identity as described herein without authority in interstate commerce in order to create the false and misleading impression that Voronina worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, or the Club's events and activities.

868.    Defendants' unauthorized use and alteration of Voronina's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

869.    Defendants' unauthorized use and alteration of Voronina's image, likeness and identity as described herein constitutes a false endorsement and a false association that is likely to confuse consumers, including actual and prospective patrons to the Club, as to whether Voronina worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

870.    Upon information and belief, Defendants' unauthorized use or alteration of Voronina's image, likeness and identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Voronina worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

871.    Defendants knew or should have known that their unauthorized use and alteration of Voronina's image, likeness and identity would cause consumer confusion as described above.

872.    Defendants' unauthorized use and alteration of Voronina's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

873.    Defendants wrongful conduct as described herein was willful.

874.    Defendants unauthorized use of Voronina's image, likeness and identity has damaged Voronina in an amount to be determined at trial.

## VORONINA COUNT II
### (Violation of N.Y. Civ. Rights Law §§ 50-51 as to all Defendants)

875.   Voronina hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

876.   Defendants altered Voronina's image to create the false appearance, perception and impression that Voronina worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

877.   Defendants published such altered Voronina images through online advertisements and through various social media outlets as described herein that were used, operated, owned, controlled, and/or managed by Defendants for advertising and trade purposes, that were designed to promote the Club, attract business to the Club and generate revenue for Defendants and that, upon information and belief, did in fact attract patrons and generate revenue for the Club and Defendants.

878.   At no time did Defendants ever receive permission or consent – whether written or otherwise – to use or alter Voronina's images, likeness or identity in any way, including but not limited to, online advertisements or social media outlets as described herein.

879.   No applicable privilege or authorization exists for Defendants' use of Voronina's image, likeness or identity.

880.   Defendants were aware at all relevant times that they never received Voronina's authority, permission or consent to use or alter her images, likeness or identity in any way, through any media and for any purpose, including for the business purpose of promoting the Club, attracting business and generating revenue for Defendants.

881.    At no time have Defendants ever compensated Voronina for the unauthorized use or alteration of her image, likeness or identity.

882.    As described herein, Defendants violated Voronina's right of privacy, violated her right of publicity, misappropriated her image, likeness and identity, and altered and published same without Voronina's authority or consent.

883.    Defendants' misconduct as described herein violates N.Y. Civil Rights Law §§ 50-51 and was wrongful.

884.    Defendants' misconduct was knowing and willful.

885.    Defendants' misconduct evinces intentional action and/or reckless disregard of Voronina's rights.

886.    Due to Defendants' violation of Voronina's rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Voronina has been damaged in an amount to be determined at trial.

887.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Voronina further requests an Order permanently enjoining Defendants from further violating Voronina's rights of privacy and publicity.

888.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Voronina further requests an award of punitive damages in an amount to be determined at trial but in no case less than twice the amount of actual damages awarded at trial.

### VORONINA COUNT III
### (Violation of N.Y. General Business Law § 349:
### N.Y. Deceptive Trade Practices Act as to all Defendants)

889.    Voronina hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

890.    Defendants used, operated, owned, controlled, and/or managed, among others, www.NYCGENTLEMENCLUB.com, www.HOTTESTNEWYORKSTRIPPERS.com, and www.NYCGENTLEMENSCLUB.com, as well as various social media outlets such as Facebook, Twitter, Instagram and Tumbler, among others, in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

891.    Defendants' use and operation of the foregoing websites and social media accounts was consumer-oriented in nature and directed to a local, national and international clientele.

892.    Defendants published Voronina's image, likeness and identity on the foregoing websites and social media outlets in order to create the false appearance, perception and impression about Voronina's affiliation with the Club, or participation in or endorsement of the advertised events and activities at the Club, among other objectives.

893.    In publishing Voronina's image, likeness and identity as described herein, Defendants intended to mislead the public.

894.    At all times, Defendants knew Voronina was not affiliated with the Club, knew that Voronina was not going to participate in any Club events and activities, and knew Voronina did not endorse Defendants' business, the Club or the Club's events and activities.

895.    Defendants' publication of Voronina's image, likeness and identity as described herein was done without Voronina's consent or authorization.

896.    Defendants' unauthorized publication of Voronina's image, likeness and identity as described herein was misleading in a material respect because it created the false appearance, perception and impression that Voronina, in fact, was in some way affiliated with the Club,

participated in the advertised events and activities, and/or endorsed Defendants' business, the Club or the Club's events and activities.

897.    Defendants' unauthorized and misleading publication of Voronina's image, likeness and identity on the foregoing websites and social media outlets as described herein have damaged Voronina's reputation and marketability in an amount to be determined at trial.

### *Heather Rae Young's Causes of Action*

### <u>YOUNG COUNT I</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125:**
**False Endorsement/Unfair Competition as to all Defendants)**

898.    Young hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

899.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* apply to Defendants and protect Young from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a).

900.    Defendants used Young's image, likeness and identity as described herein without authority in interstate commerce in order to create the false and misleading impression that Young worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, or the Club's events and activities.

901.    Defendants' unauthorized use and alteration of Young's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

902.    Defendants' unauthorized use and alteration of Young's image, likeness and identity as described herein constitutes a false endorsement and a false association that is likely to confuse consumers, including actual and prospective patrons to the Club, as to whether Young worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

903.    Upon information and belief, Defendants' unauthorized use or alteration of Young's image, likeness and identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Young worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

904.    Defendants knew or should have known that their unauthorized use and alteration of Young's image, likeness and identity would cause consumer confusion as described above.

905.    Defendants' unauthorized use and alteration of Young's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

906.    Defendants wrongful conduct as described herein was willful.

907.    Defendants unauthorized use of Young's image, likeness and identity has damaged Young in an amount to be determined at trial.

## YOUNG COUNT II
### (Violation of N.Y. Civ. Rights Law §§ 50-51 as to all Defendants)

908.    Young hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

909.    Defendants altered Young's image to create the false appearance, perception and impression that Young worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.

910.    Defendants published such altered Young images through online advertisements and through various social media outlets as described herein that were used, operated, owned, controlled, and/or managed by Defendants for advertising and trade purposes, that were designed to promote the Club, attract business to the Club and generate revenue for Defendants and that, upon information and belief, did in fact attract patrons and generate revenue for the Club and Defendants.

911.    At no time did Defendants ever receive permission or consent – whether written or otherwise – to use or alter Young's images, likeness or identity in any way, including but not limited to, online advertisements or social media outlets as described herein.

912.    No applicable privilege or authorization exists for Defendants' use of Young's image, likeness or identity.

913.    Defendants were aware at all relevant times that they never received Young's authority, permission or consent to use or alter her images, likeness or identity in any way, through any media and for any purpose, including for the business purpose of promoting the Club, attracting business and generating revenue for Defendants.

914.    At no time have Defendants ever compensated Young for the unauthorized use or alteration of her image, likeness or identity.

915.    As described herein, Defendants violated Young's right of privacy, violated her right of publicity, misappropriated her image, likeness and identity, and altered and published same without Young's authority or consent.

916.    Defendants' misconduct as described herein violates N.Y. Civil Rights Law §§ 50-51 and was wrongful.

917.    Defendants' misconduct was knowing and willful.

918.    Defendants' misconduct evinces intentional action and/or reckless disregard of Young's rights.

919.    Due to Defendants' violation of Young's rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Young has been damaged in an amount to be determined at trial.

920.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Young further requests an Order permanently enjoining Defendants from further violating Young's rights of privacy and publicity.

921.    Pursuant to Section 51 of the N.Y. Civil Rights Act, Young further requests an award of punitive damages in an amount to be determined at trial but in no case less than twice the amount of actual damages awarded at trial.

## YOUNG COUNT III
### (Violation of N.Y. General Business Law § 349:
### N.Y. Deceptive Trade Practices Act as to all Defendants)

922.    Young hereby incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully alleged herein.

923.    Defendants used, operated, owned, controlled, and/or managed, among others, www.NYCGENTLEMENCLUB.com,    www.HOTTESTNEWYORKSTRIPPERS.com,    and www.NYCGENTLEMENSCLUB.com, as well as various social media outlets such as Facebook, Twitter, Instagram and Tumbler, among others, in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

924.    Defendants' use and operation of the foregoing websites and social media accounts was consumer-oriented in nature and directed to a local, national and international clientele.

925.    Defendants published Young's image, likeness and identity on the foregoing websites and social media outlets in order to create the false appearance, perception and impression about Young's affiliation with the Club, or participation in or endorsement of the advertised events and activities at the Club, among other objectives.

926.    In publishing Young's image, likeness and identity as described herein, Defendants intended to mislead the public.

927.    At all times, Defendants knew Young was not affiliated with the Club, knew that Young was not going to participate in any Club events and activities, and knew Young did not endorse Defendants' business, the Club or the Club's events and activities.

928.    Defendants' publication of Young's image, likeness and identity as described herein was done without Young's consent or authorization.

929.    Defendants' unauthorized publication of Young's image, likeness and identity as described herein was misleading in a material respect because it created the false appearance, perception and impression that Young, in fact, was in some way affiliated with the Club,

participated in the advertised events and activities, and/or endorsed Defendants' business, the Club or the Club's events and activities.

930.    Defendants' unauthorized and misleading publication of Young's image, likeness and identity on the foregoing websites and social media outlets as described herein have damaged Young's reputation and marketability in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, each Plaintiff individually respectfully prays that this Court grant Judgment to each Plaintiff, respectively, and against Defendants as follows:

(a)    Adjudging and decreeing that Defendants have impermissibly and falsely implied each Plaintiff's association with, voluntary and authorized promotion, advertising, marketing and endorsement of Defendants' business, the Club or the Club's events and activities, have violated each Plaintiff's right of privacy, and have violated each Plaintiff's right of publicity;

(b)    Permanently enjoining and restraining Defendants from further violations and misappropriation of each Plaintiff's image, likeness and identity;

(c)    Awarding each Plaintiff damages including, without limitation, actual or compensatory-type damages, exclusive of lost profits and disgorgement of profits, and exclusive of special, consequential, exemplary or punitive damages, from the multiple unauthorized usages of each Plaintiff's image, likeness and identity, false endorsement, deceptive practices, violation of right of privacy, and violation of right of publicity, in an amount to be determined at trial but in no event less than **$3,050,000**.

(d)    Requiring Defendants to account to each Plaintiff for any and all earnings and profits derived by Defendants from each violation alleged herein;

(e)    Requiring Defendants to disgorge any fees, profits, or money to each Plaintiff by

which it has been unjustly enriched;

(f)  Awarding each Plaintiff punitive damages in an amount equal to twice the actual damages awarded at trial but in no event less than **$6,100,000**;

(g)  Awarding each Plaintiff her costs and disbursements incurred in the prosecution of this action, including reasonable attorneys' fees;

(h)  Granting such other, further or different relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury on all issues so triable.

Dated: New York, New York
      October 27, 2015

                                       **AKERMAN LLP**

                                       By \s\ M. Darren Traub, Esq.
                                       M. Darren Traub, Esq. (NYSB No. 4210035)
                                       Rosanna Vargas, Esq. (NYSB No. 5175534)
                                       666 Fifth Avenue, 20th Floor
                                       New York, NY 10103
                                       (212) 880-3800
                                       darren.traub@akerman.com
                                       rosanna.vargas@akerman.com

                                       **AKERMAN LLP**
                                       Christopher G. Oprison (DC Bar No. 489087)
                                       *pro hac vice application pending*
                                       Ildefonso Mas (NYSB No. 5202221)
                                       750 9th Street NW, Suite 750
                                       Washington, DC 20001
                                       (202) 824-1703
                                       christopher.oprison@akerman.com
                                       ildefonso.mas@akerman.com